818 406 Mass. 818

Milton *v.* Personnel Administrator of the Department of Personnel Administration.

TOWN OF MILTON & others[1] *vs.* PERSONNEL
ADMINISTRATOR OF THE DEPARTMENT OF PERSONNEL
ADMINISTRATION; FRANCIS SULLIVAN, intervener.

Norfolk. December 5, 1989. - March 7, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Statute*, Construction. *Department of Personnel Administration. Public Employment*, Police, Accidental disability retirement, Reinstatement of personnel. *Civil Service*, Police, Reinstatement of personnel. *Words*, "Approval."

This court concluded that, under G. L. c. 32, § 8 (2), the personnel administrator lacks the authority to compel reinstatement of a tenured civil service employee on disability retirement who has been found physically capable of returning to active service, without first obtaining the approval of the relevant department head, and that nothing in G. L. c. 31, § 39, compels a contrary result. [821-827]

General Laws c. 32, § 8 (2), providing that, if a public employee retired on disability is found to be capable of returning to active service, the Contributory Retirement Appeal Board "may, with the approval of the [relevant department head]" order the employee reinstated, confers discretionary authority on the relevant department head, provided that the grounds for disapproving a reinstatement are clearly articulated. [827-829]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1988.

The case was heard by *James P. Lynch, Jr.*, J., on a statement of agreed facts.

The Supreme Judicial Court granted a request for direct appellate review.

[1]The city of Somerville and the town of Watertown.

406 Mass. 818                                    819

Milton v. Personnel Administrator of the Department of Personnel Administration.

*Countess C. Williams*, Assistant Attorney General, for the Personnel Administrator of the Department of Personnel Administration.

*Robert J. Muldoon, Jr.* (*Thomas P. Gorman* with him) for the intervener.

*Anthony P. Sullivan*, City Solicitor (*Susan M. Callahan*, Assistant City Solicitor, with him) for the city of Somerville.

*John P. Flynn*, Town Counsel, for the town of Milton.

*Roger H. Randall*, Town Counsel (*Karen A. Meyer* with him) for the town of Watertown.

GREANEY, J. The dispute in this case concerns six police officers in the plaintiff municipalities: John I. Burke, Francis Sullivan, Frederick A. Westerman and Albert Williams (all of Milton), Douglas Grant (Somerville), and Joseph D. DiDonato (Watertown). The six officers, all permanent and tenured civil service employees, were retired at various times for accidental disability pursuant to G. L. c. 32, § 7 (1988 ed.).[2] All six officers have subsequently been deemed physically able to resume their duties by regional medical panels pursuant to G. L. c. 32, § 8 (1988 ed.), and have been ordered back to work by their respective local retirement boards. However, the chiefs of police in the officers' respective departments have declined to approve the officers' return to active service.[3]

---

[2] The officers' respective dates of retirement are as follows:
John I. Burke — March 14, 1981
Francis Sullivan — January 1, 1976
Frederick A. Westerman — August 17, 1982
Albert Williams — February 1, 1982
Douglas Grant — December 15, 1980
Joseph D. DiDonato — April 13, 1979

[3] The police chiefs stated various reasons for the decisions not to approve the retirees' reinstatements. The Somerville police chief refused to reinstate Grant, until Grant had successfully completed a thorough medical and psychological evaluation with the Somerville police department as required of all police officer applicants since 1981. The Watertown police chief refused to reinstate DiDonato after two physicians reexamined DiDonato and disagreed with the regional medical panel's conclusion that he was physically fit to return to work. The record before us does not contain an explanation for the Milton police chief's refusal to approve the reinstatement of the four disability retirees from his department.

820          406 Mass. 818

Milton v. Personnel Administrator of the Department of Personnel Administration.

The personnel administrator of the Department of Personnel Administration (DPA) oversees the civil service system, establishes lists of persons eligible for appointment and promotion, issues certified lists for appointment and promotion, and approves any such appointment and promotion. Upon receiving notification from the local retirement boards that the six retirees referred to above were fit to return to work, the personnel administrator notified the municipalities that, in his view, the retirees are entitled to reinstatement to the next available vacancies in their departments pursuant to G. L. c. 31, § 39, and G. L. c. 32, § 8 (2).

Despite this notification, the municipalities have refused to reinstate the six retirees. The municipalities contend that G. L. c. 32, § 8 (2), which governs the reinstatement of public employees who are on disability retirement, requires the approval of the appropriate department head (here the chief of police) before any retiree can be reinstated. The respective chiefs have consistently refused to grant approval to the six retirees, although vacancies exist in their departments which they seek to fill. Due to this refusal, the personnel administrator has advised the municipalities that, in accordance with the DPA's interpretation of the applicable State laws, he cannot certify names from civil service eligibility lists for vacant police officer positions until the retirees have been reinstated.

On October 17, 1988, the municipalities commenced an action against the personnel administrator in the Superior Court. The action sought a declaration, pursuant to G. L. c. 231A, that the words "with the approval of the head of any department in which a vacancy exists," appearing in G. L. c. 32, § 8 (2), confer on municipal employers the authority to refuse to return a permanent employee who is on disability retirement to active service if the employee's department head declines to approve reinstatement.[4] Francis

---

[4]The municipalities also sought a preliminary injunction compelling the personnel administrator to furnish them with a list of eligible civil service applicants to fill existing vacancies in their police departments, and di-

406 Mass. 818                                     821

Milton *v.* Personnel Administrator of the Department of Personnel Administration.

Sullivan, one of the six retired police officers, was permitted to intervene in the case pursuant to Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), to assert his position that the role of local department heads in the reemployment process was ministerial only and not discretionary. A statement of agreed facts was prepared by the parties and supplemented by various affidavits and documents.

A judge in the Superior Court considered the record prepared by the parties. The judge concluded in a written memorandum of decision that the words "with the approval of the head of any department in which a vacancy exists" appearing in G. L. c. 32, § 8 (2), deprived the municipalities of the authority to reinstate a disabled retiree in the absence of approval by the retiree's department head. The judge also concluded that the personnel administrator could not require the municipalities to reinstate formerly disabled retirees when a ground existed for the department head's disapproval of their reinstatement. A judgment making the above declarations entered. The personnel administrator, the intervener, and the city of Somerville took appeals.[5] We allowed an application for direct appellate review.

1. The dispute in this case concerns the proper interpretation of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39,[6] both of

_____

recting him not to delay the appointment of new officers. The injunction was denied and its denial is not in issue on this appeal.

[5]Somerville appeals only from that portion of the judgment which purports to require the department head to state a ground for declining to approve a reinstatement.

[6]General Laws c. 32 establishes the Contributory Retirement System for Public Employees and applies to all public employees. Section 8 (2) of c. 32 provides in relevant part as follows:

"(2) *Restoration of Members to Active Service.* — If, as a result of the report of [a] regional medical panel, the [retirement] board finds the mental or physical condition of [a member retired for disability] has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement, or in a similar employment in the same governmental unit.

which pertain to the restoration to active service of tenured civil service employees who have been retired for disability. The particular issue is whether, under these statutes, a tenured civil service employee who has been granted a disability retirement may be restored to active service without first having obtained the approval of the applicable department head. The personnel administrator argues that the two statutes conflict with one another and that the first paragraph of § 8 (2) has to be read as applying only to noncivil service employees, thereby allowing reinstatement of a civil service employee who is fit for service without regard to department head approval. The municipalities contend that, consistent with the established rule that statutes dealing with the same subject matter should be interpreted harmoniously to effectuate a consistent body of law, see *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718 (1986), the two statutes combine to form a cohesive whole. The end product, in the municipalities' view, is essentially what the judge decided: that department head approval is required for reinstatement of retirees who are found to be physically able to return to active service. As did the judge, we agree with the municipalities.

The first paragraph of G. L. c. 32, § 8 (2), which sets forth the reinstatement procedure in the event that a vacancy ex-

"In the event no such vacancy exists, and such position or a similar position is classified under civil service, the board and respective employer shall provide written notification with department of personnel administration who shall ensure that such retired member is reinstated to the first available suitable vacancy, in accordance with the provisions outlined in sections thirty-nine and forty-six of chapter thirty-one."

General Laws c. 31 establishes the civil service system and, accordingly, applies only to civil service employees. The third paragraph of § 39 of c. 31 (amended through St. 1987, c. 697, § 8) reads as follows:

"If a permanent [civil service] employee who has become separated from his position because of disability shall be subsequently capable of employment as determined pursuant to section eight of chapter thirty-two by the retirement board, as defined in section one of chapter thirty-two, such employee shall be placed in a position in the same or similar title in the department from which he was separated or any other department prior to the appointment from any civil service list[.]"

ists in the relevant department, including department head approval, does not differentiate between civil service and non-civil service employees. Chapter 32, of which § 8 (2) is a part, applies to all public employees within the contributory retirement system, and its definitions of the terms "[e]mployee" and "[m]ember" in § 1 are drawn broadly to encompass all such employees. It is apparent, as the municipalities argue, that the first paragraph of § 8 (2), literally read, applies to all public employees without regard to whether they are part of the civil service system.

This conclusion is supported by the language in the second paragraph of § 8 (2), which expressly concerns itself with the status of civil service employees who are subject to being restored to active service but for whom no vacancy exists in the relevant department. The Legislature's precise reference to civil service in the second paragraph of § 8 (2), and the absence of any similar reference in the first paragraph of the same statute, indicate that the first paragraph is of general application to all public employees who are on disability retirement, and requires department head approval prior to their reinstatement if they are determined to be physically fit for work.

Despite the relatively clear language of § 8 (2), the personnel administrator maintains that the first paragraph of that statute cannot apply to civil service employees. His argument proceeds as follows: (1) because department head approval is not mentioned in the second paragraph of § 8 (2), it is not required for the reinstatement of a civil service employee when no vacancy in the relevant department exists; (2) the first paragraph expressly requires department head approval in the event that a vacancy does exist; (3) to read the first paragraph as including civil service employees would lead to the anomalous result that the requirement of department head approval would apply when a vacancy exists, but would not apply when no vacancy exists; (4) therefore, the rule against interpreting statutes to lead to illogical results, see *State Tax Comm'n* v. *LaTouraine Coffee Co.*, 361 Mass.

773, 778 (1972), precludes reading the first paragraph as covering civil service employees.

We reject this strained interpretation. First, and most importantly, the personnel administrator's argument fails to acknowledge the absence of any express language in the first paragraph of § 8 (2) limiting that part of the law to noncivil service employees. The language of that paragraph, which is our primary interpretative tool, see *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977), is general in nature; it provides no basis for an interpretation which excludes civil service employees. Second, the anomaly the defendant postulates does not exist. As we shall explain more fully below in our discussion of G. L. c. 31, § 39, department head approval *is* in fact required prior to any reinstatement of a civil service disability retiree. The presence or absence of a vacancy at the time the retiree seeks reinstatement is irrelevant to this requirement. Thus, we find no reasonable basis for adopting the narrow reading of the first paragraph of G. L. c. 32, § 8 (2), urged by the personnel administrator.

We next consider the meaning of the third paragraph of G. L. c. 31, § 39. That statute confers certain rights on tenured civil service employees such as the six retired police officers involved in this case. However, § 39 does *not* provide what the personnel administrator claims it does — an un-. qualified right to reinstatement upon determination of a civil service employee's fitness to return to work. Rather, § 39 provides that a qualifying employee "shall be placed in a position in the same or similar title in the department from which he was separated or any other department *prior to the appointment from any civil service list*" (emphasis supplied). The emphasized language makes clear that § 39 protections apply only when a vacancy becomes available in the department. If, for example, the relevant department or departments were reducing staff, the disability retiree would have no right to reinstatement.[7] Section 39, therefore, merely puts

[7]If the sole factor preventing reinstatement is the lack of a suitable vacancy, the civil service disability retiree would continue to receive his re-

406 Mass. 818                                            825

Milton v. Personnel Administrator of the Department of Personnel Administration.

the retiree ahead of all other qualified civil service applicants on the list for filling any vacancies that might open up.

Further, an employee's § 39 rights are expressly conditioned on the receipt of department head approval. Section 39 grants the disability retiree preferential placement on the civil service list only if he is "capable of employment *as determined pursuant to section eight of chapter thirty-two by the retirement board . . . .*" (emphasis supplied). The express reference to G. L. c. 32, § 8, incorporates the requirements of that statute into G. L. c. 31, § 39, and, as we have concluded above, one of those requirements is department head approval. Thus, a civil service disability retiree seeking reinstatement must have obtained "the approval of the head of any department in which a vacancy exists," G. L. c. 32, § 8 (2), before he may assert any rights based on G. L. c. 31, § 39.

Correctly interpreted, then, the first paragraph of G. L. c. 32, § 8 (2), provides that if (1) any member of the public employees' contributory retirement system, including a civil service member, is deemed fit to return to service by the local retirement board, (2) there is a vacancy in that employee's department, and (3) the head of that department approves, the retirement board *may* order the member restored to active service. If any one of these three preconditions — including department head approval — is not met, the retirement board lacks the authority to order reinstatement under G. L. c. 32, § 8. If the reinstatement of a civil service retiree is prevented only by the lack of a suitable vacancy, the second paragraph of § 8 (2) provides that the retiree's reinstatement rights are determined by § 39 of G. L. c. 31. Section 39, in turn, ensures that the civil service retiree, if subsequently deemed fit to return to work through a procedure defined to include department head approval, will be reinstated prior to any other applicant from the civil service list.[8]

---

tirement allowance until being reinstated. See G. L. c. 32, § 8 (2), third par. (1988 ed.).

[8] We also reject the personnel administrator's policy argument that this interpretation of the statutes will violate a civil service employee's protec-

Through this procedure, the Legislature has taken cognizance of the fact that retirees, like these police officers who have been out of active service for a lengthy period of time, may not be ready for work in the absence of a determination by the party most knowledgeable about the current demands of their jobs that they can be competent and efficient members of the municipal workforce. Automatic reinstatement, without the safeguard of department head approval, could expose the municipality to unnecessary liability to third parties, and to the further possibility that the reinstated employee will be reinjured and will be able to receive new and possibly higher benefits under G. L. c. 41, § 111F (1988 ed.), or under G. L. c. 32, § 7 (2) (a)(ii) (1988 ed.). On the

tion against discharge without just cause and a hearing as provided for by G. L. c. 39, § 41 (1988 ed.).

Conditioning the reinstatement of civil service disability retirees on department head approval, argues the personnel administrator, will permit public employers to "use the occasion of disability as a unique opportunity to sweep out a tenured civil service employee for any reason at all[.]" The better procedure, he suggests, would be to reinstate the disability retirees automatically, then commence discharge proceedings against them.

This argument is based on an erroneous reading of the statutes and essentially asks us to make policy judgments which lie within the province of the Legislature. Section 39, as we have discussed, does not create an unconditional right to reinstatement, and does not apply at all unless and until the requirements of G. L. c. 32, § 8 (2) (including department head approval) have been met. In addition, § 41 of c. 31 applies to the *discharge* of civil service employees, which is defined as "the permanent, involuntary separation of a person from his civil service employment by his appointing authority." G. L. c. 31, § 1. A disability retirement under c. 32 is neither permanent (the retiree may be reinstated upon compliance with statutory requirements) nor a complete separation (the retiree usually continues to draw compensation in the form of a disability pension). See *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 495-496 (1937) (describing the differences between discharge under G. L. c. 31 and retirement under G. L. c. 32). Thus, the protections afforded by G. L. c. 31, § 41, are not implicated in this case.

Also, contrary to the personnel administrator's arguments, nothing in our interpretation will curtail the protections afforded to handicapped civil service employees under various State laws. See, e.g., art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments (prohibiting discrimination on the basis of handicap); G. L. c. 151B, § 4 (16) (1988 ed.) (same). These laws may limit the authority of department heads in some circumstances to deny approval to reinstatement.

whole, the interconnection of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, strikes a balance between the protection needed by municipalities faced with rehiring employees who may not have worked for some years or even a decade or more, and the rights of the employees, including civil service employees, who are capable of returning to their old positions.

2. The intervener, Francis Sullivan, argues that, assuming some degree of department head approval is required before reinstatement, the nature of that approval is ministerial and not discretionary.[9] According to Sullivan, the approval provided for in G. L. c. 32, § 8 (2), serves merely to ensure smooth operation of the rehiring process and does not confer on the department head the authority to prevent reinstatement of a civil service disability retiree who the retirement board has determined is fit to work.

Sullivan's argument relies on *Hoban* v. *Boston Retirement Bd.*, 355 Mass. 681 (1969). In *Hoban*, we interpreted identical language ("with the approval of") in G. L. c. 32, § 58. Section 58, part of the Veterans' Retirement Act, provides that a veteran of the Spanish Civil War or of the World Wars who meets certain conditions "shall, at his own request, with the approval of the retiring authority, be retired from active service[.]" *Id.* See *Glorioso* v. *Retirement Bd. of Wellesley*, 401 Mass. 648, 650 n.3 (1988). To qualify for § 58 retirement, a person must: be a veteran within the meaning of G. L. c. 32, § 2, have at least thirty years of service for the Commonwealth or a political subdivision thereof, and be in active service prior to June 30, 1939. See *LaCouture* v. *Retirement Bd. of Quincy*, 11 Mass. App. Ct. 738, 741 (1981).

The plaintiff in the *Hoban* case was a veteran who fulfilled the statutory requirements for a § 58 retirement. Nonetheless, the retirement board voted to deny the plaintiff's retirement, purportedly as a matter of discretion. In resolving this

---

[9]Sullivan also relies upon the arguments made by the personnel administrator which have been resolved above.

dispute, we addressed the issue of whether the language "with the approval of the retiring authority" in § 58 conferred on the retirement board discretionary or purely ministerial power. We held that "the function of the retiring authority was ministerial solely," 355 Mass. at 684, and upheld the order granting the plaintiff's retirement.

Sullivan argues by analogy to *Hoban* relying on the "canon of statutory construction that where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute." *Beeler* v. *Downey*, 387 Mass. 609, 617 (1982). The *Hoban* decision is not controlling here. First, the conclusion in *Hoban*, that the approval power provided in G. L. c. 32, § 58, was ministerial, was based almost exclusively on the fact that the statute employed mandatory rather than permissive language. We noted in *Hoban* that, when it enacted § 58, the Legislature had before it two versions of the bill — one which provided that the veteran "*shall* be retired," the other which provided that the veteran "*may* be retired." 355 Mass. at 683 (emphasis in original). Faced with this choice between "shall" and "may," the Legislature chose the mandatory "shall." We concluded that "this legislative choice was intended to confer purely a ministerial role on the retiring authority." *Id.* at 684. By contrast, the statute under consideration in this case, G. L. c. 32, § 8 (2), contains the permissive "may." Thus, the very basis upon which we accepted the ministerial function argument in *Hoban* is absent in this case. Second, we have repeatedly noted that the veterans' retirement provisions of G. L. c. 32 stand apart from the remainder of that chapter. See *Glorioso* v. *Retirement Bd. of Wellesley*, *supra* at 650-651; *Bianchi* v. *Retirement Bd. of Somerville*, 359 Mass. 642, 647 (1971). We therefore reject the intervener's efforts at reasoning by analogy to G. L. c. 32, § 58, and our interpretation thereof in the *Hoban* case, in determining the scope of the requirement of department head approval contained in G. L. c. 32, § 8 (2).

Further, while we have noted that the term "approval" may have different meanings in different contexts, see

*Springfield* v. *Commonwealth*, 349 Mass. 267, 271 (1965), we have insisted that parties seeking to limit the scope of a general statutory "approval" requirement provide us with a specific basis for doing so. See *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 697 (1977). See also *Massachusetts Trustees of Eastern Gas & Fuel Assocs.* v. *United States*, 312 F.2d 214, 222 (1st Cir. 1963) (noting that limitations on statutory grants of power will not be lightly inferred). Because Sullivan has not provided us with such a basis in this case, and none appears in the statute, we apply the plain meaning of the term "approval," see *Pratt* v. *Boston*, 396 Mass. 37, 46 n.10 (1985), and hold that the term, as used in G. L. c. 32, § 8 (2), confers discretionary authority on the relevant department head. We also agree with the judge that a necessary implication from this granting of discretionary authority is that a department head must articulate the ground or grounds of his decision when he acts pursuant to G. L. c. 32, § 8 (2), to disapprove a reinstatement. See *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 544 (1965).[10]

3. In conclusion we hold that under G. L. c. 32, § 8 (2), the personnel administrator lacks the authority to compel reinstatement of a disabled employee who has been found physically capable of return to service in the absence of approval by the employee's department head. The judge correctly determined the questions put before him. No other questions beyond those discussed have been raised by the parties.

*Judgment affirmed.*

---

[10]None of the contrary arguments made by Somerville persuades us that this tenet of fairness should not be required.