Botsford, J.
INTRODUCTION
Jere Pelletier (“Pelletier”), a former firefighter in the City of Lynn, seeks judicial review of a Contributory Retirement Appeal Board (“CRAB”) decision dated February 18, 1994. In its decision CRAB upheld the suspension of Pelletier’s accidental disability retirement benefits by the Lynn Retirement Board (“the Lynn board” or “the board”). Pelletier appeals pursuant to G.L.c. 30A, §14, claiming that CRAB committed an enror of law in affirming the Lynn board’s suspension. For the reasons discussed below, this matter is *396 to be remanded to CRAB for further proceedings consistent with this decision.
BACKGROUND
I take the facts, which are not in dispute, from the decision of the administrative magistrate from the Division of Administrative Law Appeals.
Pelletier worked as a firefighter for Lynn from 1977 to June 30, 1984, when he was retired for accidental disability due to a knee injury, based on an involuntary application filed by the Lynn fire chief. In 1985, after his disability retirement, Pelletier moved to Florida where he held several jobs before returning to New England. The jobs included six months at a golf club as a ranger/starter; two sales positions with car dealers; and a job with American Fire and Safety Film. He was terminated from all or most of these jobs because of attendance problems due to his injured knee.
Pelletier returned to New England in December, 1989 and in early 1991, he took a position with Peachtree Bank Services as an independent salesperson, but was again terminated because of physical pain and incapacity related to his knee. At the time of the proceedings before the Lynn board as well as CRAB, Pelletier no longer held that position and was unemployed.
In June, 1990, the Lynn board performed a “desk review” of Pelletier’s file pursuant to 840 Code Mass. Regs. §10.15, to determine what Pelletier’s earning capacity was and to determine whether he “would be in line for a rehab program.” (Administrative Record (“A.R.”], p. 67.) In February, 1991, the Lynn board had Pelletier re-examined by a regional medical panel pursuant to G.L.c. 32, §8(1). The panel reported that although Pelletier “continues to have significant symptoms relative to the right knee,” it could “not find evidence on physical examination or by x-ray, to support Pelletier’s continuing symptoms.” The panel concluded that Pelletier could return to firefighting work without restriction. Having so found, the panel did not consider whether and what type of occupations other than firefighting Pelletier might be able to engage in. (See A.R., p. 31.)
On November 6, 1991, the Lynn board conducted a hearing to determine “whether [Pelletier] should be re-employed according to the law.” Pelletier explained to the board that he could not perform the work of a firefighter because his knee pain was intermittent and disabling and he could not climb ladders or do strenuous physical work. On February 4, 1992, Pelletier was informed by the Lynn board that his name would be placed on a list for rehiring as a firefighter for nine months, and if at the end of nine months no position was available to him, his pension would be modified “based on the fact that [he] could be earning [the] salary [of a firefighter], in accordance with Chapter 32 Sec. 8 (3).” (A.R., p. 62.)
On February 6, 1992, the Lynn fire chief informed the Lynn board that he would “not . . . accept Jere Pelletier back as a member of the Lynn Fire Department. My decision is based on my policy of not reinstating members who have retired on a disability-pension.” (A.R., p. 79.)
By letter of December 11, 1992, the Lynn Board again wrote to Pelletier, informing him that he had been on the re-hiring list for nine months (without being re-hired), and that “[therefore, effective January 1, 1993, your monthly pension check will be modified/suspended.” Consistent with this letter, in January, 1993, Pelletier received a check for $46.00. His pension prior to the “modification/suspension” was $1,470.00 per month.
Pelletier appealed the Lynn board’s decision to CRAB pursuant to G.L.c. 32, §16(4). An evidentiary hearing was held before a magistrate of the Division of Administrative Law Appeals on May 5, 1993. In a decision dated July 15, 1993, the magistrate overturned the Lynn board’s decision and ordered Pelletier’s pension restored retroactively to January, 1993. She concluded that the Lynn board failed to modify Pelletier’s retirement allowance in accordance with G.L.c. 32, §8(3) (sic)[2] and applicable regulations, 840 Code Mass. Regs. §10.18(6).
The Lynn board appealed the administrative magistrate’s decision to CRAB. On February 18, 1994, CRAB issued a final decision adopting all the magistrate’s finding of facts, but affirming the Lynn board’s suspension of Pelletier’s retirement pension. CRAB concluded that because Pelletier was determined to be capable of returning to work as a firefighter, it was proper to discontinue his pension under c. 32, §8(3) and 840 Code Mass. Reg. §10.19 since he had “potential earnings in an amount equal to the salary of a firefighter.” (A.R., p. 2.) On March 17, 1994, Pelletier filed this complaint for judicial review of CRAB’S decision under G.L.c. 30A, §14.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass. App. Ct. 333, 334 (1981), citing Almeida Bus Lines Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n., 401 Mass. 713, 721 (1988); Quincy City Hosp. v. Labor Relations Comm’n, 400 Mass. 745, 748-49 (1987). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Voca *397 tional School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977).
Nevertheless, the court is not bound by an administrative decision that was based on an error of law. Bagley v. Contributory Retirement Appeal Board, 397 Mass. 255, 259 and n. 5 (1986). See Retirement Board of Brookline v. Contributory Retirement Appeal Board, 33 Mass.App.Ct. 478, 480 (1992), citing Robinson v. Contributory Retirement Appeal. Board, 20 Mass.App.Ct. 634, 636 (1985).
In this case, Pelletier argues that G.L.c. 32, §8(2) (“§8(2)’[3] properly governs his case because that is the section of the retirement law that is intended to apply to public employees retired on a disability who, like Pelletier, have been deemed by a medical panel to be “physically able to return to the same or a similar position”; and because the Lynn board in fact did apply §8(2) to him in the first instance. Pelletier contends that CRAB committed on error of law in relying on G.L.c. 32, §8(3) (“§8(3)’[4] to affirm the Lynn board’s decision; that section, he states, was intended to apply only to disability-retired employees who have been found by a retirement board to be either presently engaged in gainful employment other than the position they held before retirement, or able to engage in such other employment.
I agree that §8(2) is the provision in G.L.c. 32, §8 which properly governed the Lynn board’s actions in this case, and that §8(3) could not be applied to him on the record presented. By its terms, §8(2) applies to situations where a retirement board determines, based on the report of a medical panel, that a disability-retired employee’s physical condition has so changed that he is currently able to return to the same position as the one he held before retirement, or a position similar to it. See id., first paragraph. That is precisely what occurred here: the medical panel, in its report of February 7, 1991, determined that Pelletier could return to his prior position as a firefighter without restriction (A.R., pp. 30-34); and there is no dispute that the Lynn board adopted the panel’s determination.
Section 8(2) (a) provides comprehensive direction for implementing a retirement board’s decision that a particular employee should be restored to active service. First, if there is a job opening available for the same position as or similar to the one the employee had filled before his disability retirement, and if the head of the department in which the vacancy occurs approves, the board may order the employee to be reinstated into that position (§8(2)(a), first paragraph.) Second, if there is no job opening or vacancy available, or if the department head does not approve the employee’s reinstatement,[5] then the employee is to continue receiving his retirement allowance until reinstatement occurs (id., third paragraph), except that (a) the retirement board may require the employee to be re-examined by the medical panel (id., third paragraph), and (b) if the employee is not restored to active service within nine months, and the board finds that the employee is employed and that his actual earnings combined with his retirement allowance are greater than the employee’s compensation in his prior position, then the board may suspend or reduce the allowance (id., fourth paragraph).
Since §8(2) applied in this case, the Lynn board, and CRAB in review, was obligated to comply with its provisions. The Lynn board initially did so, paying Pelletier’s retirement allowance for the nine months following its decision, while at the same time placing Pelletier on the “re-hire” list. (See §8(2)(a), fourth paragraph.)
The problematic action taken by the Lynn board in relation to Pelletier, affirmed by CRAB on review, occurred at the end of the nine month period. As indicated above, §8(2)(a), fourth paragraph, states what is to happen at that time: after nine months, if there is no vacancy in the same position as or one similar to the job the retired employee had held, the local board should determine whether the retired employee “is engaged in a gainful occupation” and receiving “actúale arnings” (emphasis supplied) which, when combined with his retirement allowance exceed the compensation he would be receiving if reinstated in his former public employment; if such a determination is made, the board may reduce the retirement allowance to the extent needed to ensure that no such excess occurs. In contrast to §8(3)(discussed below), §8(2) makes absolutely no reference to “potential earnings” in its fourth paragraph or anywhere else. The focus is on “actual earnings” only, and I decline to read in any additional language. See Beeler v. Downey, 387 Mass. 609, 616-17 (1982) (where legislature has used specific language in one paragraph of a statute and not in another, the language should not be implied where it is not present). Moreover, §8(2) does not describe any circumstance other than the employee’s receipt of “actual earnings” which would authorize the board to adjust the employee’s disability pension. As a consequence, the conclusion seems inescapable that where a retired employee whom a retirement board has determined fits under §8(2) is not in fact receiving “actual earnings” in another occupation at the end of the nine month period, the employee is to continue to receive his retirement allowance in accordance with §8(2)(a), third paragraph, until he is reinstated or until a re-examination by a medical panel suggests or permits some other course of action.
The Lynn board did not follow this course. At the close of the nine-month period, the board ignored the applicable provisions of §8(2) just discussed and directly — with no referral of Pelletier for re-examination by a medical panel or further administrative proceedings of any sort — suspended Pelletier’s pension under *398 §8(3) because of his “potential” earnings as a firefighter. In affirming this action, CRAB reasoned that since the Lynn board had determined (based on the medical panel’s report) that Pelletier could return to work as a firefighter, he definitely was able to “engage in gainful occupation,” and his potential earnings were exactly the same as his compensation would have been if he had been reinstated in his old job. Accordingly, CRAB concluded that “(s]ince a disability pension is 72% of the retiree’s salary, in this case the potential earnings of [Pelletier] exceed his pension and his pension is to be suspended.” (A.R., p. 2; see A.R., p. 62.) CRAB’s reasoning and conclusion are premised on an error of law: on the basis of the administrative proceedings and record before the Lynn board, that board could not permissibly resolve Pelletier’s entitlement to a disability retirement allowance under the provisions of §8(3).
Section 8(3) is a separate and independent provision from §8(2). Its text, ánd a reading of its terms in conjunction with §8(2), make plain that §8(3) is to-apply only in cases where a retirement board determines a retired employee is able to work, but not able to do so in the same or similar position to the one he held before his disability retirement.
Section §8(3) provides that the local board is to reduce a public employee’s retirement allowance where it finds — based on the report of a medical panel, the employee’s submission of earnings information, or the employee’s completion of a rehabilitation program — that the employee is (1) able to work, and (2) “the annual rate of his actual or potential earnings is less than his regular compensation . . . but. . . more than the difference between such regular compensation and the normal yearly amount of his retirement allowance . ..” (emphasis supplied); §8(3) further provides that the board may suspend the employee’s pension completely if it finds that his “actual or potential earnings are more than [his] regular compensation . . .” The term “regular compensation” is defined in §8(3) to mean “regular compensation which would have been payable during the preceding year had the [employee] continued in service in the grade held by him at the time he was retired." These references to actual or potential earnings which are less or more than the retired employee’s “regular compensation" indicates that the “gainful occupation” the local board might find the employee able to engage in is certainly not his former position, for which he would presumably receive his “regular compensation” exactly — not more, and not less.[6]
The comparison of §8(3) with §8(2) makes the point even more clearly. As discussed above, §8(2) deals specifically and comprehensively with the actions a local board is to take in handling the pension of a retired public employee whom the board has determined is capable of returning to his former position or one similar to it. Section 8(3) contains no explicit reference whatsoever to such an employee. In light of the detail of §8(2), it must be assumed that if the legislature intended §8(3) to apply as well to such an employee, it would have said so; the absence of any reference must be given effect. See Negron v. Gordon, 373 Mass. 199, 204-05 (1977).[7]
Apart from the specific words and terms used in §§8(2), 8(3) and the implementing regulations, basic considerations of common sense and fairness support the conclusion that §8(3) does not apply to an employee whom a retirement board has found able to return to his former position. If such an employee were not reinstated in his position or a similar one within nine months after the board made such a finding, it would be either on account of his refusal to do so — a circumstance specifically addressed in §8(2) — or because there was no suitable position available for him to be reinstated in. If indeed the employee’s former job or one similar to it is not available, it is illogical as well as unfair to treat the employee, for retirement benefits purposes, as though he were nevertheless reinstated— by classifying him as having “potential” earnings that are the same as the salary he would receive if he were back in his old job, and therefore no longer entitled to receive disability retirement benefits.
Pelletier falls into the category of employee just described. He was not reinstated as a firefighter in Lynn because the fire chief refused to do so, and he was not offered any other public employment similar to his old position. In fact, he was unemployed at the time of all administrative proceedings. It is only cynical to conclude that in these circumstances the potential earnings of a firefighter should be attributed to him, leaving him with no retirement benefits at all.
In sum, given (1) the Lynn board’s determination that Pelletier could return to work as a firefighter; (2) the refusal of the Lynn fire chief to reinstate Pelletier; (3) the apparent inability of the Department of Personnel Administration to reinstate Pelletier in a suitable vacancy;[8] and (4) the absence of any determination by the board that Pelletier was employed and actually earning money which, when added to his retirement allowance exceeded his “regular compensation,” the Lynn board was obligated by the provisions of §8(2) and implementing regulations to retain Pelletier on a reinstatement or “re-hire” status and to continue paying his retirement allowance.[9] CRAB erred in upholding the Lynn board’s disposition of this case; in accordance with the recommendation of the administrative magistrate, CRAB should have ordered the Lynn board to reinstate Pelletier’s retirement allowance, effective January, 1993.
ORDER
For the foregoing reasons, the decision of the Contributory Retirement Appeal Board is vacated, and the case is'remanded to that board, which is to order the Lynn Retirement Board to reinstate the retirement allowance of Pelletier effective January, 1993.

The administrative magistrate’s decision does refer to G.L.c. 32, §8(3), but it is clear from that decision that this reference was in error: the magistrate clearly intended to refer to G.L.c. 32, §8(2). (See A.R., p. 24.)

Section 8(2) provides in relevant part as follows:
(2) Restoration of [Employees] to Active Service. — (a) If, as a result of the report of. . . [a] regional medical panel, the [local retirement] board finds the mental or physical condition of such retired [employee] has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired [employee] to return and be restored to active service in the same employment in which such [employee] was employed at the time of his retirement, or in a similar employment in the same governmental unit.
In the event no such vacancy exists, and such position or a similar position is classified under civil service, the board and respective employer shall provide written notification with the department of personnel administration who shall ensure that such retired [employee] is reinstated to the first available suitable vacancy . . .
When under the provisions of this section, no vacancy exists in the same or similar position whether subject to [civil serviceI or not he shall continue to receive such retirement allowance until such reinstatement takes place, provided further that the board may request that such [employee1 be re-examined by the regional medical panel in accordance with the provisions of subsection (1). When such employer seeks to reinstate such retired [employee] . . . and such [employee] refuses ... to return to service or to file such information as the board may require, it may revoke or suspend his retirement allowance.

In the event said retired [employee] remains on a reinstatement status for a period exceeding nine months and no vacancy to the same or a similar position exists and the board finds that the retired [employee] is engaged in a gainful occupation and the annual rate of his actual earnings when combined with an annual rate of his retirement allowance exceed the rate of regular compensation for such position if he were reinstated, then said board may reduce or suspend such amount of his retirement allowance which when combined with his actual earnings, exceed the annual rate of compensation of such position he would be reinstated to if a vacancy existed. . .

(Emphasis supplied.)

General Laws c. 32, §8(3) provides in part:
(3) Modifications of retirement allowance. If, as a result of the report of such medical panel, as a result of the submission of earnings information under section ninety-one A, or as a result of the completion of a rehabilitation program under subdivision (5) of section twenty-one, the board finds that such retired [employee] is engaged or is able to engage in gainful occupation and that the annual rate of his actual or potential earnings is less than his regular compensation as defined in this subdivision, but is more than the difference between such regular compensation and the normal yearly amount of his retirement allowance, then the yearly amount of his pension shall be reduced, and if his actual or potential earnings are more than such regular compensation his pension shall be suspended. Notwithstanding any other provisions of this section, if such retired [employee] submits earnings information pursuant to section ninety-one A, indicating earnings in excess of regular compensation, as therein described, such [employee’s] pension shall be reduced as provided for in this subdivision and shall not be increased for a period of one year unless a medical panel finds that the mental or physical condition of such member has deteriorated. If the annual rate of his earnings should later be changed, the yearly amount of his pension shall be further modified by reinstating, increasing, reducing, or suspending it, as the case may be. The yearly amount of such reduced or modified pension at all times shall be equal to the excess, if any, of the amount of such regular compensation over the sum of the yearly amount of regular life annuity payable to him under clause (i) of Option (a) of subdivision (2) of section twelve and the annual rate of his cunrent actual or potential earnings, but in no event shall it exceed the yearly amount of the pension originally granted to him as adjusted pursuant to section one hundred and two. For purposes of this subdivision, regular compensation means, subject to further definition by regulations of the division of public employee retirement administration, regular compensation which would have been payable during the preceding year had the member continued in service in the grade held by him at the time he was retired.
(Emphasis supplied.)

Under §8(2), there are two prerequisites to an employee’s reinstatement into active service: (1) existence of a vacancy in the appropriate job title or position; and (2) the approval of the department head. Both of these conditions must be satisfied, and a department head has discretion to refuse an employee’s reinstatement even though vacancies in the appropriate position exist. Milton v. Personnel Adm’r of Dept, of Personnel Admin., 406 Mass. 818, 825 (1990).
After establishing the two conditions, §8(2) proceeds to describe what happens if no job vacancy exists, but the section does not specifically mention what is to occur if the department head withholds approval of a reinstatement even though there is a vacancy. As a practical matter, of course, if a department head refuses to reinstate an employee, there is no available job vacancy — at least within that department. In order to make the statute work as an effective piece of legislation, See, e.g., Tedford v. Massachusetts Housing Fin. Agency, 390 Mass. 688, 696 (1984), it is reasonable to read those provisions of §8(2) dealing with the situation where no job vacancy occurs as also applicable where the approval of the department head is withheld.

CRAB argues that although §8(3) does not deal with a situation where a retired employee’s potential earnings are the same as his regular compensation, it has construed the statute as authorizing suspension in such circumstances. (State Defendant’s Memorandum of Law on the Merits, p. 10, n.7.) CRAB further contends that its interpretation of §8(3) is entitled to deference because it is expert in administering the statutory retirement scheme. I agree that in general, an administrative agency’s construction of a statute is entitled to weight, but that deference does not extend to an interpretation which contravenes the governing statute. See Boylston Development Group, Inc. v. 22 Boylston St Corp., 412 Mass. 531, 539 (1992). While it is reasonable to interpret §8(3) as permitting suspension of a retired employee’s pension where the board determines that his potential earnings in a job other than the position from which he retired would be the same as his “regular compensation," for the reasons discussed in the text, there is no basis to permit suspension under §8(3) in every case where the board determines the employee is physically able to return to his former position, but reinstatement has not occurred at the end of nine months for reasons out of the employee’s control. At the very least, one may assume that if indeed the legislature did intend §8(3) to apply to this category of employees, the legislature, in specifying in §8(3) what is to happen where a retired employee’s actual or potential earnings are less or more than his regular compensation, would also have made mention of the situation where those earnings were the same as the employee’s regular compensation.

The regulations promulgated by the Public Employee Retirement Administration (“PERA”) to implement the applicable provisions of the retirement law, 840 Code Mass. Regs. §10.00 et seq., and support the interpretation of §8(2) and 8(3) adopted here — that §8(2) alone, and not §8(3,) applies to a retired employee whom the local board determines is able to return to the same or a similar position. The regulations consistently treat such employees as a separate category from those who might otherwise be subject to modification of their *400 retirement allowance based on actual or potential earnings. See 840 Code Mass. Regs. §10.15(3). Compare id., §10.18 with id., §10.19.

The record is silent as to whether the Lynn board notified the Department of Personnel Administration about Pelletier’s status, although the board was required to do so both under §8(2)(a), second paragraph and the PERA regulations. (See 840 Code Mass. Regs. §10.18(4).)

It is important to emphasize that this obligation is not necessarily open-ended. Section 8(2), third paragraph, expressly authorizes the board to cause an employee such as Pelletier to be re-examined by a medical panel in a case such as this. It may be that another panel will agree with the Lynn fire chief (as well as Pelletier) that Pelletier cannot or should not return to his position as a firefighter. If this were so, the board could pursue what it attempted to do here, viz., a modification of Pelletier’s retirement allowance pursuant to the provisions of §8(3); the board could also pursue one of its initial interests, namely, having Pelletier enroll in a rehabilitation program. See G.L.c.32,§21(5). Even if a medical panel were to find again that Pelletier is able to return to his former firefighter position, as I indicated in note 8 above, the record does not show whether and the extent to which the board or the Department of Personnel Administration has pursued the identification of a suitable public employment position in addition to the Lynn Fire Department in which to reinstate Pelletier.