## Town of Hull *vs.* Massachusetts Commission Against Discrimination & another.[1]

No. 07-P-478.

Plymouth. March 3, 2008. - September 3, 2008.

Present: Grasso, Armstrong, & Rubin, JJ.

*Massachusetts Commission Against Discrimination. Anti-Discrimination Law,* Employment, Age, Handicap. *Civil Rights,* Damages, Attorney's fees. *Administrative Law,* Hearing, Agency's authority, Regulations, Agency's interpretation of statute. *Public Employment,* Reinstatement of personnel, Accidental disability retirement. *Civil Service,* Fire fighters, Reinstatement of personnel. *Emotional Distress. Damages,* Emotional distress, Attorney's fees.

The Massachusetts Commission Against Discrimination (commission) did not exceed its statutory authority in promulgating 804 Code Mass. Regs. § 1.21(1) (1998), which permits qualified hearing officers to conduct public hearings of discrimination claims for the commission, where no statutory provision expressly prohibited the commission from delegating public hearings to officials other than commissioners, and where the regulation was reasonably related to the purpose of G. L. c. 151B, which requires the holding of public hearings and the making of findings of fact in a large number of discrimination claims in pursuit of equal treatment of all citizens. [527-530]

In a civil action challenging a decision of the Massachusetts Commission Against Discrimination (commission) that a town discriminated against a fire fighter on the basis of age and handicap in violation of G. L. c. 151B, § 4, the judge properly concluded that the commission did not commit an error of law in finding that the fire fighter was qualified for reinstatement when he returned from disability retirement, where substantial evidence supported a commission hearing officer's determination that the town's fire chief prevented the fire fighter from meeting the statutory prerequisites for reinstatement. [530-532]

In a civil action challenging a decision of the Massachusetts Commission Against Discrimination (commission) that a town discriminated against a former employee on the basis of age and handicap in violation of G. L. c. 151B, § 4, the judge erred in affirming that portion of the commission's decision directing the town to reimburse the town's retirement board — which had withdrawn from the proceedings before the commission — for disability pension benefits disbursed to the employee, where the commission could not make an award in favor of a nonparty. [532]

In a civil action challenging a decision of the Massachusetts Commission Against Discrimination (commission) that a town discriminated against a

[1]Donald Gillis.

former employee on the basis of age and handicap in violation of G. L. c. 151B, § 4, sufficient evidence existed to support the findings of the commission, and those of its hearing officer, on the appropriate measure of compensation to the employee for emotional distress. [532-533]

CIVIL ACTION commenced in the Superior Court Department on April 14, 2003.

A motion for judgment on the pleadings was heard by *Suzanne V. DelVecchio*, J; a motion for entry of a final judgment was heard by *Linda E. Giles*, J., and entry of a judgment on findings by the court was ordered by her.

*James B. Lampke* for town of Hull.

*Caitlin A. Sheehan* for Massachusetts Commission Against Discrimination.

*David B. Rome* for Donald Gillis.

ARMSTRONG, J. The town of Hull (town) appeals from a judgment affirming a decision of the Massachusetts Commission Against Discrimination (commission). The commission found that the town discriminated against defendant Donald Gillis on the basis of age and handicap in violation of G. L. c. 151B, § 4, when it failed to reinstate him as a firefighter upon his return from disability retirement. The commission awarded Gillis $63,106.47 in damages for lost wages, $50,000 in damages for emotional distress, and $61,212.28 in attorney's fees and costs, and further ordered the town to pay $94,760.02 to the Hull Retirement Board (board), in repayment of the retirement benefits the board had paid to Gillis after the town's discriminatory act.

The town claims that the commission's decision is based on errors of law and is not supported by substantial evidence. See G. L. c. 30A, § 14(7)(*c*), (*e*). For reasons we explain below, we affirm the lost income and emotional distress damage awards and accompanying attorney's fees, but conclude that the commission erred in ordering reimbursement of disability income benefits paid by the board.

*Background.* Gillis began work as a firefighter for the town in November, 1965. In 1985, he fell from a fire truck and was injured. Gillis was found disabled from returning to work and was put on disability retirement by the board.

In late 1994, when Gillis was approximately fifty-eight years

old, the board required Gillis to undergo a medical examination. See G. L. c. 32, § 8(1), as in effect prior to its amendment by St. 1996, c. 306, § 16 (the "1996 amendment"). The appointed physician reported that Gillis's injury had resolved and that he now could perform firefighter duties. The board, in turn, requested the approval of the chief of Hull's fire department for Gillis's reinstatement, which was then required under G. L. c. 32, § 8(2). See *Milton* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 406 Mass. 818, 825-826 (1990). In a letter to the board, the fire chief refused his approval.

A hearing before the board followed in March, 1995, where Gillis asked the fire chief why he had refused to approve Gillis's reinstatement. The chief responded, "I like you, Don, but I have to think of the town. I'll get more bang for the buck by hiring a younger guy." During this period, the commission's hearing officer found, there were two vacant firefighter positions available, which the town filled with two men aged thirty-two and thirty.

*Discussion.* Many of the town's arguments on appeal challenge determinations by the hearing officer that the fire chief's testimony before the hearing officer was not credible. The hearing officer is the sole judge of the credibility of the witnesses appearing before her, and thus these arguments must fail. See *School Comm. of Brockton* v. *Massachusetts Commn. Against Discrimination*, 423 Mass. 7, 15 (1996). We address each of the town's more substantial arguments in turn.

1. *The commission's authority to delegate public hearings to hearing officers.* The town argues that the commission unlawfully delegated the public hearing in this case to a hearing officer, where the governing statute requires either the full commission or a single commissioner to conduct all public hearings. The town acknowledges that a regulation promulgated by the commission permits qualified hearing officers to conduct public hearings for the commission, see 804 Code Mass. Regs. § 1.21(1) (1998),[2] but claims that this regulation exceeds the

---

[2]Title 804 Code Mass. Regs. § 1.21(1) (1998) provides, in relevant part: "The Public Hearing shall be conducted by a Commissioner, other than the Investigating Commissioner, designated by the Chair, or by a person found to be qualified by the Commission as a Hearing Officer, or by the Full Commission."

commission's statutory authority.[3]

General Laws c. 151B, § 3(6), inserted by St. 1971, c. 923, provides that "[t]he commission through its chairman may appoint a single commissioner to hold public hearings, as hereinafter provided, and to otherwise act on its behalf in connection therewith; provided, however, that a person aggrieved by the decision of said single commissioner may, within ten days of said decision, file an appeal for rehearing or review by the commission." General Laws c. 6, § 56, as appearing in St. 1990, c. 150, § 194, provides that "[e]ach commissioner shall hold such hearings as are needed in the respective region, but each commissioner may also hold hearings in other regions."

These provisions do not explicitly require that public hearings be conducted by only the full commission or a single commissioner. General Laws c. 151B, § 3(6), can be read as authorizing a single commissioner to hold public hearings, as contrasted with the entire commission. Likewise, G. L. c. 6, § 56, can be read as merely clarifying that commissioners are not restricted to their designated regions for purposes of holding public hearings. Neither provision expressly prohibits the commission from delegating public hearings to officials other than commissioners.

"An administrative agency has the authority to promulgate regulations giving effect to legislative mandates." *Massachusetts Fedn. of Teachers, AFT, AFL-CIO* v. *Board of Educ.*, 436 Mass. 763, 773 (2002). See *id.* at 773-774, and cases cited. "[T]he validity of a regulation . . . will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' " *Consolidated Cigar Corp.* v. *Department of Pub. Health,*

---

[3]It is unclear from the record whether the town raised this argument before the commission. In its complaint in the Superior Court, the town claimed to have raised the argument before the full commission, yet the full commission's decision includes no mention of the issue. Ordinarily, failure to raise an issue before the commission would constitute waiver. See *School Comm. of Norton* v. *Massachusetts Commn. Against Discrimination*, 63 Mass. App. Ct. 839, 845-846 (2005). However, if the commission lacks authority to delegate public hearings to hearing officers, the hearing officer would be without jurisdiction to hear the case, see *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 520 (2007), and waiver would not apply. See *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981).

372 Mass. 844, 855 (1977), quoting from *Mourning* v. *Family Publications Serv., Inc.*, 411 U.S. 356, 369 (1973).

Under its enabling statutes, the commission may "appoint such attorneys, clerks, and other employees and agents as it may deem necessary, . . . and prescribe their duties." G. L. c. 151B, § 3(3), inserted by St. 1946, c. 368, § 4. Further, the Legislature has granted the commission the power to "adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of [c. 151B], and the policies and practice of the commission in connection therewith." G. L. c. 151B, § 3(5), inserted by St. 1946, c. 368, § 4.

The commission has only three commissioners. See G. L. c. 6, § 56. According to the commission's brief, in the year 2000 (the year of the hearing officer's decision in Gillis's case), 4,000 cases were filed with the commission. The commission's delegation to hearing officers of its duty to hold public hearings, subject to later review by the commission, effectuates the commission's legislative mandate. The regulation is reasonably related to the purpose of c. 151B, which requires the holding of public hearings and the making of findings of fact in a large number of discrimination claims in pursuit of its purpose to implement the right to equal treatment guaranteed to all citizens. See *Katz* v. *Massachusetts Commn. Against Discrimination*, 365 Mass. 357, 366 (1974).

Both this court and the Supreme Judicial Court have routinely considered and affirmed many decisions of the commission where a hearing officer conducted the public hearing.[4] Those cases illustrate that the practice of assigning hearing officers to conduct public hearings has been accepted without question over many years. Given the long acceptance of the practice and the deference we accord to the interpretation of its constituent law by the agency the Legislature authorized to execute the statutory policy, see *Haines's Case*, 71 Mass. App. Ct. 845, 846

[4]Examples include *Wynn & Wynn, P.C.* v. *Massachusetts Commn. Against Discrimination*, 431 Mass. 655 (2000); *Connolly* v. *Suffolk County Sheriff's Dept.*, 62 Mass. App. Ct. 187 (2004); *School Comm. of Norton* v. *Massachusetts Commn. Against Discrimination*, 63 Mass. App. Ct. 839 (2005); and *Trustees of Health & Hosps. of the City of Boston, Inc.* v. *Massachusetts Commn. Against Discrimination*, 65 Mass. App. Ct. 329 (2005), *S.C.*, 449 Mass. 675 (2007).

(2008), we would be reluctant at this late date, and in the absence of explicit statutory language requiring us to do so, to find a jurisdictional defect in the way the commission has been conducting its business for many years.

For all of these reasons, we conclude that the commission did not exceed its statutory authority in promulgating 804 Code Mass. Regs. § 1.21(1) (1998), or in delegating the public hearing in Gillis's case to a hearing officer.

2. *Regional medical panel requirement.* The town argues that the commission committed an error of law by finding that Gillis was qualified for reinstatement to a firefighter position. Under the version of G. L. c. 32, § 8(2), in effect at the time, the statute had three prerequisites for reinstatement: (1) a determination by a regional medical panel that the retiree is qualified to perform the duties of the position; (2) a vacancy in the retiree's former department; and (3) the approval of the department head.[5] See *Milton* v. *Personnel Administrator of the Dept. of Personnel Admn.*, 406 Mass. at 825. The town claims that, because Gillis had been cleared by only a single physician and not a regional medical panel, Gillis was not eligible for reinstatement, irrespective of the fire chief's approval; thus, the fire chief's refusal to approve Gillis's reinstatement, whether or not discriminatory as alleged, was not the operative factor causing Gillis to be precluded from reinstatement, as Gillis did not otherwise meet the statutory requirements for reinstatement.

The hearing officer's determination that the fire chief prevented Gillis's reinstatement was a finding of fact supported by substantial evidence. The hearing officer found that, had the fire chief approved Gillis's reinstatement, the board would have initiated the process for a regional medical panel to examine Gillis and that the panel would have cleared Gillis for reinstatement.[6] The fire chief's refusal to approve Gillis's reinstatement, in other words, caused the reinstatement to grind to a

---

[5] The 1996 amendment to G. L. c. 32, § 8(2), eliminated the department head's approval as a precondition. See *White* v. *Boston*, 428 Mass. 250, 253-254 (1998).

[6] The last finding was based on the results of the examination by the single physician in 1994, as well as on evidence submitted by Gillis that he underwent examination by a regional medical panel in December, 1999, and January, 2000, and was found fit for duty as a firefighter at that time.

halt, simply because there was no point in conducting the examination if the chief would not accept Gillis back in any event. See G. L. c. 151B, § 4(1C), (16).

The town argues that the commission's decision, notwithstanding its support in the evidence, is in conflict with our unpublished decision in *Gillis* v. *Hull*, 53 Mass. App. Ct. 1108 (2001), which held that Gillis's demand for reinstatement following the 1996 amendment was properly denied by the board because Gillis had not met the remaining prerequisite for reinstatement, namely, clearance by the regional medical panel.[7] The argument is unavailing to efface the effect of the town's discrimination in 1995. Our decision spoke to a later time when the department head's approval was no longer required for reinstatement under G. L. c. 32, § 8(2). Our decision at that time is res judicata only for the proposition that Gillis was not eligible for reinstatement as of August 31, 1999, because he had not at that time been cleared by the regional medical panel. It had nothing to do with the question whether the fire chief's refusal in 1994-1995 was discriminatory (or whether his refusal was the reason for Gillis's remaining on disability retirement).

Following approval by the regional medical panel in 2000, Gillis was theoretically eligible for reinstatement as a firefighter, provided there was then a vacancy in the fire department, see G. L. c. 32, § 8(2)(*a*), second par., as appearing in St. 1998, c. 252, § 2, and provided that he successfully completed a retraining program required by G. L. c. 31, § 39, for public employees returning to active service from disability retirement after more than five years' separation from the job.

---

[7]The record of the 2001 case, of which we take judicial notice, see *Brick Constr. Corp.* v. *CEI Dev. Corp.*, 46 Mass. App. Ct. 837, 839 n.4 (1999), indicates that after passage of the 1996 amendment, Gillis sought reinstatement to active service in the fire department. He took the position that his clearance by the single physician in 1994 sufficed for reinstatement. The board sought a ruling by the Public Employee Retirement Administration Commission, which responded that Gillis could not be reinstated without clearance of the three-member regional medical panel. In February, 1999, Gillis filed his complaint in Superior Court challenging that ruling, but he agreed also to undergo a regional medical panel examination. That examination eventually took place in December, 1999, and January, 2000. Our 2001 decision related to the correctness of a judgment entered in the Superior Court following allowance on August 31, 1999, of the town's motion to dismiss Gillis's action, prior to the regional medical panel examination.

See *Sullivan* v. *Brookline*, 435 Mass. 353, 359-363 (2001). The record does not disclose whether there was then a vacancy; moreover, it does not disclose that Gillis ever began or successfully completed the required retraining. In any event, by sometime in 2001, Gillis would reach the mandatory retirement age for firefighters (see note 11, *infra*). It is possible that time simply ran out. Notwithstanding the 1996 amendment (implemented in November of that year), the record does not disclose that the effect of the fire chief's discrimination came to a definitive end anytime before Gillis aged out of the possibility of restoration to active service. The record, therefore, supported the commission's award of lost income damages for the entire period.[8]

3. *Other issues*. a. *Reimbursement for payment of disability pension benefits*. The part of the commission's order directing the town to reimburse the board for $94,760.02 in disability pension benefits disbursed for the same period (August 1, 1995, through March 31, 2000) must be struck from the commission's award, because the board, although originally a party to the proceedings before the commission, had withdrawn at an early stage, with the agreement of all parties. The commission could not make an award in favor of a nonparty for the reasons stated in *D'Errico* v. *Assessors of Woburn*, 384 Mass. 301, 305 (1981), and *Demoulas* v. *Demoulas*, 428 Mass. 555, 591 (1998). Compare *Brothers Bldg. Co. of Nantucket, Inc.* v. *Yankow*, 56 Mass. App. Ct. 688, 693-694 (2002) (arbitration award). Moreover, no basis has been shown in these proceedings for the board or the State Retirement System to be reimbursed for all or any part of its disability pension payments during the subject period.[9]

b. *Emotional distress damages*. We have considered the town's

---

[8]The hearing officer calculated lost income damages over the period from August 1, 1995, to March 31, 2000, as $187,904.84, and subtracted from that amount $94,760.02 that had been paid to Gillis over that same period as disability pension benefits, and $15,006 in earnings from a family business. The commission subtracted, as double counting, the further sum of $15,032.35 in vacation pay, resulting in a total award to Gillis of $63,106.47 for lost wages.

[9]Our decision in this case assumes, of course, that no basis now exists for the board to claim reimbursement from Gillis. Should that assumption be incorrect, it would be necessary for the trial court to reconsider the damages

arguments with respect to the excessiveness of the award ($50,000) for emotional distress. The argument is predicated on *Stonehill College* v. *Massachusetts Commn. Against Discrimination*, 441 Mass. 549, 576, cert. denied sub nom. *Wilfert Bros. Realty Co.* v. *Massachusetts Commn. Against Discrimination*, 543 U.S. 979 (2004). After the *Stonehill* decision came down, the Superior Court remanded the present case to the commission for reconsideration of the damages for emotional distress in light of *Stonehill*. The hearing officer buttressed her earlier award with more detailed findings, and the commission then confirmed that portion of its award, with a further award of attorney's fees ($23,204) for the work involved in the remand. We have no basis for concluding that the evidence did not support the findings of the hearing officer and the commission on the appropriate measure of compensation to Gillis for emotional distress. See *Smith* v. *Bell Atl.*, 63 Mass. App. Ct. 702, 723-724 (2005); *School Comm. of Norton* v. *Massachusetts Commn. Against Discrimination*, 63 Mass. App. Ct. 839, 849 (2005).

c. *Other issues.* No issue is made in this appeal on the size of the attorney's fee award, either as part of the commission's original order, or as part of the order on remand. As the issue is not argued, we do not consider it.[10]

*Conclusion.* The second paragraph of the judgment of the

---

award arising from the discrimination, which was reduced by the amount of the board's payments.

[10]The town makes other arguments that require little discussion. First, the town argues that the commission committed an error of law by applying G. L. c. 152, § 75B(1), to determine that Gillis was handicapped within the meaning of c. 151B. Firefighters are not protected by c. 152. See G. L. c. 152, § 69; *Eyssi* v. *Lawrence*, 416 Mass. 194, 197-198 (1993). Thus, the town contends, it was error for the hearing officer to rely on c. 152, § 75B(1), in finding that Gillis had established a prima facie case of handicap discrimination. The town does not, however, challenge the finding that Gillis was in a protected class because of his age, and that finding is enough to sustain the damage awards for emotional distress and for lost wages.

Second, the town argues that the commission committed an error of law by admitting in evidence at the public hearing, and relying on, a stipulation submitted by the board (which was no longer a party to the case) that it would have, inter alia, ordered that Gillis be examined by a regional medical panel were it not for the fire chief's refusal to approve Gillis's reinstatement. However, the town has failed to show that the hearing officer indeed relied on the stipulation (although she did mention it) in her decision; the hearing officer does not state in her decision that she was relying on the stipulation and,

Superior Court is modified to require that paragraphs number 4 (relating to reimbursing the town retirement board) and 5 (reinstatement of Gillis[11] to the position of firefighter) of the commission's order dated March 18, 2003, be struck, and to affirm the decision of the commission in all other respects. As so modified, the judgment of the Superior Court is affirmed.

Gillis's request for appellate attorney's fees is allowed. He may submit a petition therefor, together with supporting materials, within fourteen days of the date of the rescript of this opinion. The town shall have fourteen days thereafter to respond. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*

---

in fact, she specifically stated during the hearing that she would not consider the stipulation as evidence in the case. Other evidence adequately supported the finding in question.

Finally, there is no merit to the town's argument that the commission's finding that Gillis satisfied his duty to mitigate damages is not supported by substantial evidence.

[11]Gillis reached the mandatory retirement age (sixty-five) for firefighters in 2001. See G. L. c. 32, § 1, "Maximum age."