Gants, J.
The plaintiff, Robert Noorigian (‘'Noorigian”), was a police officer with the Woburn Police Department until October 10, 1981, when he was placed on accidental disability retirement because of injuries he received while on a traffic detail. On May 24, 1999, after nearly eighteen years on disability, the Disability Unit of the Massachusetts Public Employee Retirement Administration (“PERAC”) determined that Noorigian was able to perform the essential duties of his previous position as a patrolman. Under G.L.c. 32, §8(2)(a), once PERAC makes this determination regarding a public employee who has been on disability retirement for more than two years, the public employee “shall be returned to said position, provided the position is vacant. If the position has been filled, the [public employee] shall be granted a preference for the next available position or similar position for which he is so qualified.” G.L.c. 32, §8(2)(a).[1] Noorigian was ultimately reinstated to active duty as a Woburn police officer on October 1, 2000. The question presented in this case and these cross motions for summary judgment is whether Noorigian, as a matter of law, was entitled to reinstatement at an earlier date and, if so, when.
Background
Before considering this question, it is necessary first to review the history of G.L.c. 32, §8(2) and its subsequent judicial interpretation. Before it was amended in 1996, §8(2) provided that, if PERAC were to find that the mental or physical condition of a public employee on disability retirement had so changed that “he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired [public employee] to return and be restored to active service . . .” (Emphasis added.) In the summer of 1996, the Boston Globe’s Spotlight Team published a series of articles regarding its investigation into alleged abuses in public disability retirement, claiming to have discovered 305 former public employees receiving disability retirement who were healthy enough to be employed in the private sector in jobs at least as demanding as the public jobs from which they had retired. See White v. City of Boston, 428 Mass. 250, 253 & n. 4 (1998). The Legislature promptly responded to this scandal by amending §8(2) to provide that, if PERAC were to find “that the retired [public employee] is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, said [retired public employee] shall be returned to said position, provided the position is vacant. If the position has been filled, the member shall be granted a preference for the next available position or similar position for which he is so qualified.” (Emphasis added.)[2]
While there is no official legislative history regarding this amendment, see White at 253, it is plain what its legislative purpose wasthe Legislature wanted to *478 ensure that, when a former public employee on disability retirement was found able to return to his previous job, he return to that job as soon as possible and start receiving a day’s pay for a day’s work rather than a disability pension. Its purpose was not only to end abuses revealed in the disability retirement system, but also to protect the public fisc. If a previously disabled public employee could perform his previous work, the Legislature did not want to expend public funds to continue to pay him a retirement pension and another person to perform his previous job. The amendment to §8(2) ensured that the now able-bodied public employee either return to his job or surrender his disability pension.
The Supreme Judicial Court, based on what it characterized as the “plain and unambiguous” statutory language, held that this amendment removes all discretion from the public employer regarding reinstatement once PERAC finds that the retired public employee is qualified and able to perform the essential functions of his previous job. White v. City of Boston, 428 Mass. at 253-54. The able-bodied retired employee must be given the next vacant position even if the employee has allegedly engaged in criminal misconduct while on disability retirement. O’Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998). In such circumstances, the public employer must rehire the retired employee and, if the allegations of prior criminal misconduct are proven, commence proceedings to fire the newly-rehired employee. Id. In view of this controlling authority, there is no dispute that the City of Woburn was required to re-hire Noorigian as a patrolman, and it did on October 1, 2000. Noorigian has filed this lawsuit because he contends that the City of Woburn breached its obligation under §8(2) by not hiring him sooner.
Discussion
There is no dispute that the City of Woburn had an obligation to reinstate Noorigian to the next available patrolman vacancy. The dispute centers on what constitutes a vacancy. Noorigian makes three alternative arguments. First, he contends that, regardless of the amount budgeted to the Woburn Police Department, there was an immediate vacancy under the applicable City ordinance. Alternatively, he argues that, if a vacancy depends on the number of budgeted patrolman positions, such a vacancy arose as of December 3, 1999. Finally, he argues that, even if a vacancy exists only when the police department decides to fill the position, that vacancy should be deemed to have commenced on July 1, 2000, when funds become available to finance that decision, and not on October 1, 2000, after approval was received for the required retraining program. This Court will consider each of these alternatives.
1. Vacancy in Positions under a City Ordinance
There is no dispute that, as of May 24, 1999, when PERAC found that Noorigian was qualified for and able to perform the essential duties of a patrolman, the Woburn Municipal Code (“the Code”) provided:
The Police Department shall consist of the following personnel divisions:
A. Regular and Reserve Force. This division shall consist of the Chief of Police; three (3) Captains; four (4) Lieutenants; nine (9) Sergeants; fifty-eight (58) Police Officers; sixteen (16) Reserve Police Officers, and five (5) Civilian Dispatchers.
Code at §2-59. There is also no dispute that, as of May 24, 1999, there were only 55 police officers in the Woburn Police Department. Noorigian, therefore, contends that there was a vacancy in the position of police officer (actually, three vacancies), and that the Department was obliged to reinstate him immediately.
Reliance on this language has been rejected, in analogous circumstances, by the Supreme Judicial Court in Gannon v. Mayor of Revere, 401 Mass. 232 (1987). In Gannon, the plaintiff argued from virtually identical language in a Revere City Ordinance that the City had a duty to fill all vacancies until the number of positions specified in the Ordinance were reached. Id. at 235. The Court refused to find that the use of the word “shall” in this context imposed such a duty. Id. “The ordinance says what the police department ‘shall consist of.’ It does not direct that the mayor must fill all vacancies in all circumstances." Id. Applying that reasoning to the instant case, the Code provision that the Regular and Reserve Force Division shall consist of 58 police officers does not require the City of Woburn to fill all 58 positions; budgetary constraints permit the City lawfully to fill fewer than 58.
In fact, the City of Woburn’s fiscal year 2000 budget, covering the fiscal year July 1, 1999 through June 30, 2000, funded only 55 patrolman positions, not 58. This Court finds that this budgetary decision did not create a vacancy (or three vacancies) in the patrolman position that the City of Woburn was required to fill by reinstating Noorigian, since the City of Woburn was not legally obligated to fill all 58 positions. To interpret §8(2) as Noorigian suggests would contravene the Legislature’s purpose to preserve the public fisc, because it would mean that the City of Woburn would need to pay more police officers than it wanted in that fiscal year.
2. Vacancy in a Budgeted Position
The 55 budgeted patrolman positions for fiscal year 2000 were all filled until December 3, 1999, when Patrolman William Jewer retired from the Police Department. Police Chief Mahoney, however, chose not to fill that budgeted position in fiscal year 2000 because he recognized (and later confirmed) that the Department had already spent a disproportionate amount in overtime costs and, regardless of whether or not he filled Officer Jewer’s position, overtime would continue to be substantially over-budget for the remainder of the fiscal year. According to the analysis *479 that the Chief received in January 2000, even without filling this 55th patrolman’s position, the Department would likely spend $176,000 beyond its budget in fiscal year 2000.
Noorigian contends that the vacancy emerged once Officer Jewer retired, and that the Chief was required under §8(2) to reinstate him on December 4, 1999 to fill this budgeted vacancy. This Court finds that, just as a City need not fill all the vacant positions provided for in an ordinance, it need not fill all the vacant positions provided for in an annual budget. The City of Woburn’s budget authorized the Chief to hire 55 patrolman; it did not require him to. When, as here, unforeseen circumstances drive up other expenses beyond the amount budgeted, it is entirely appropriate for a police chief to decide to save money by not filling an authorized position in order to meet (or come close to meeting) his budget allocation.
Therefore, for all practical purposes, a vacancy arises under §8(2) when a budgeted position becomes vacant and the City decides to fill that position. The dictates of §8(2) mean that the City cannot fill that position with anyone other than the formerly disabled employee who is éntitled to reinstatement.
The interpretation of §8(2) proposed by Noorigian, requiring the City to reinstate the formerly disabled employee as soon as a budgeted vacancy arose, misses the legislative purpose behind §8(2). The Legislature did not amend §8(2) in 1996 because it wanted to safeguard the right of formerly disabled public employees to return to work. Rather, it cared about avoiding the waste of public monies that occurs when a formerly disabled, but now able-bodied, public employee remains on disability retirement while another public employee is paid to perform work that the formerly disabled employee can now perform. That is why §8(2)(a) only mandated reinstatement to fill a vacancy. If the Legislature wanted to preserve the right of a formerly disabled employee to work, it could have mandated reinstatement regardless of the existence of a vacancy, but this would have increased the burden on the public fisc, not reduced it. The Legislature wanted to eliminate waste, not bloat public payrolls with unwanted employees. This legislative purpose would not be satisfied if the City of Woburn had to hire a patrolman for a position it did not want or need, and thereby increase its expenses beyond budget. In contrast, this legislative purpose would be satisfied if the City of Woburn had to hire Noorigian first once it decided that it wanted or needed another patrolman.
The Timing of the Vacancy in the Budgeted Position that the City Decided to Fill
The evidence is undisputed that, in fiscal year 2001, a budgeted patrolman’s position remained vacant and the City decided to All that position, so Noorigian had to be reinstated to that position. Nor is there any dispute that the decision to fill the vacancy was made prior to July 1, 2000, when the 2001 fiscal year commenced, and that the funds needed to pay for this position were available as of the beginning of the fiscal year. Noorigian, however, was not reinstated on July 1, 2000. Instead, his reinstatement did not commence until October 1, 2000, after the Human Resources Division of the Massachusetts Executive Office for Administration and Finance approved the Woburn Police Department’s retraining program proposal for Noorigian. Noorigian contends that his reinstatement should have started no later than July 1, 2000; the City of Woburn contends that his reinstatement was properly commenced as of October 1, 2000.
Under G.L.c. 31, §39, if a public employee who had been on retirement disability becomes capable of employment after more than five years of retirement, “such placement rights shall be subject to the completion of such employee of a retraining program established by the appointing authority, and approved by the personnel administrator.” This statute, which predated the 1996 amendment to §8(2), means that the formerly disabled employee cannot return to his old job until he has completed an approved retraining program. The City of Woburn contends that, in the case at bar, G.L.c. 31, §39 means that Noorigian cannot be reinstated as a police officer until he has completed a retraining program that is approved by the Human Resources Division of the Massachusetts Executive Office for Administration and Finance, so the reinstatement cannot commence, at the earliest, until that approval is obtained.
This may be a reasonable interpretation of G.L.c. 31, §39, but it conflicts directly with recent controlling precedent from the Appeals Court. In Sullivan v. Town of Brookline, the Town argued that a formerly disabled patrolman was not entitled to reinstatement until he completed the retraining program. 50 Mass.App.Ct. 16, 19-20 (2000). The Appeals Court, attempting to harmonize the automatic reinstatement required under the amended §8(2) with the language of the older G.L.c. 31, §39, held that the law mandated reinstatement before completion of a retraining program “but permits the town on reinstatement to require the completion of a retraining program.” Id. at 20. In other words, the Town had to reinstate the police officer before the retraining but could fire him if he failed to complete it.[3]
The City cannot justly delay Noorigian’s reinstatement until the retraining program was approved when, under Sullivan, it could not have delayed his reinstatement until Noorigian passed the retraining. Rather, under Sullivan, the reinstatement becomes effective once the City has a vacant budgeted position and the intention to fill it, even though this inevitably means for an employee who has been on disability retirement for more than five years that he will be reinstated on the City payroll before he is cleared to return to his previous job. If the formerly disabled employee cannot complete the retraining program, the remedy left *480 under Sullivan is to fire him, not to refuse to hire him. Therefore, this Court grants summary judgment as to liability to Noorigian to the extent that the City, as a matter of law based on the undisputed facts of this case, was required to reinstate him as a police officer effective July 1, 2000.
ORDER
For the reasons stated above, after hearing:
1. The plaintiff Noorigian’s motion for summary judgment is ALLOWED as to liability to the extent that the defendants, as a matter of law based on the undisputed facts of this case, were required to reinstate him as a police officer effective July 1, 2000.
2. The defendants’ motion for summary judgment is DENIED.
The Clerk of Court shall schedule a hearing for ' assessment of damages.

 The public employee continues to receive his retirement allowance until the reinstatement takes place. G.L.c. 32, §8(2)(a).

 The alacrity of the Legislature's response is striking. The Spotlight Team articles were published from May through July 1996; the Legislature enacted the amendment on August 7, 1996, to become effective on November 7, 1996.

 It is interesting to note that this is exactly what the City of Woburn did with Noorigian, who was terminated from his employment as a police officer following his reinstatement after he failed the physical component of the retraining examination. Noorigian does not challenge the propriety of that termination in this action.