## JOHN L. SULLIVAN *VS.* TOWN OF BROOKLINE.

No. 98-P-1976.

Norfolk. March 13, 2000. - August 21, 2000.

Present: PORADA, DREBEN, & DUFFLY, JJ.

Further appellate review granted, 433 Mass. 1101 (2001).

*Public Employment,* Accidental disability retirement, Reinstatement of personnel. *Public Employee Retirement Administration Commission. Statute,* Construction.

The Public Employee Retirement Administration Commission (PERAC), acting in 1997 on a formerly disabled employee's application for reinstatement under G. L. c. 32, § 8, properly applied standards for the required medical examination that remained in effect, for a reasonable period, pending the issuance of new regulations by PERAC under amendments to G. L. c. 32, § 8(2), effected by St. 1996, cc. 306 and 427, which would set new standards. [17-19]

Where St. 1996, c. 306, mandates automatic reinstatement of a formerly disabled employee who has been medically certified as eligible to be reinstated, the retraining program, mandated by G. L. c. 31, § 39, for such an employee separated from service for more than five years, may be required upon such reinstatement. [19-20]

CIVIL ACTION commenced in the Superior Court Department on January 2, 1998.

The case was heard by *Patrick F. Brady,* J., on motions for summary judgment.

*George F. Driscoll, Jr.,* Town Counsel, for the defendant.

*F. Robert Houlihan* for the plaintiff.

DREBEN, J. In August, 1977, the plaintiff, a patrolman in the town of Brookline, was granted an accidental disability retirement pursuant to G. L. c. 32, § 7. He sought reinstatement in September, 1997, under G. L. c. 32, § 8. After examination and issuance of a certificate by a medical panel, approval of the medical panel certificate by the Public Employee Retirement Administration Commission (PERAC), and transmission by the Brookline retirement board of the panel's certificate to the

town's police chief for appropriate action (reinstatement), the police chief declined to reinstate the plaintiff. The plaintiff brought this action in the Superior Court seeking injunctive and declaratory relief.

A Superior Court judge entered a preliminary injunction ordering the "Brookline appointing authority [to] preserve one of its patrolman's vacancies until the merits of th[e] dispute are resolved." Subsequently, on cross motions for summary judgment, a second Superior Court judge allowed the plaintiff's motion, and entered a judgment declaring that "the plaintiff has a right to immediate reinstatement as a police patrolman," and ordered the town officials to reinstate him forthwith. The town of Brookline has appealed from that judgment. We affirm.

1. The town's main contention is that PERAC and the medical panel appointed by it employed incorrect legal standards in determining whether the plaintiff was eligible for reinstatement.

An analysis of G. L. c. 32, § 8, and the regulations promulgated thereunder is in order. Before public employees retired for disability under §§ 6 and 7 of G. L. c. 32 may be reinstated, they must receive a certificate from a regional medical panel appointed by PERAC. See G. L. c. 32, § 8(2)(*a*). In 1996, § 8 was amended by c. 306 and c. 427 of the Acts of 1996.[1] Prior to the amendment inserted by c. 306, reinstatement required the appropriate retirement board, here the Brookline retirement board, to find, as a result of the report of a regional medical panel, that "the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position."[2] After the amendment, a retired employee is to be reinstated if the medical panel "determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired . . . ."

On December 17, 1996, shortly after the effective dates of c. 306 and c. 427 of the Acts of 1996, PERAC sent a memorandum to the retirement boards containing the following first paragraph:

"G. L. c. 32, § 8(2), as amended by chapter 306 and chapter 427 of the acts of 1996, allows a member to be re-

---

[1] The changes to § 8 made by c. 427 of the Acts of 1996 are not relevant to our decision.

[2] Upon receipt of such finding from a retirement board, the appointing authority had discretion whether to reinstate the applicant.

examined for the purpose of determining whether he or she can perform the essential duties of his or her position. At its first meeting, the Public Employee Retirement Administration Commission determined that while guidelines for determining what constitutes the essential duties of a position are being developed, the standard in effect prior to the amendments would be utilized. Thus, requests for re-examination, whether made by a retiree or a retirement board, are being dealt with in the same manner as prior to the amendment."

We therefore must decide whether, contrary to the town's contention, PERAC was permitted to determine that the pre-amendment standards for medical examinations could remain in effect pending the issuance of new regulations by PERAC under the 1996 amendments to G. L. c. 32, § 8(2).[3,4] We conclude that, under the provisions of St. 1996, c. 306, PERAC could make that determination, at least for a reasonable period after the effective date of the act.

We reach this conclusion for the following reasons. While St. 1996, c. 306, made significant changes in § 8 that were self-executing — e.g., appointing authorities no longer had discretion as to reinstatement because retired members cleared by a

---

[3]The Superior Court judge did not rule on this question. He noted that the 1996 amendments suggested a more extensive evaluation for members retired more than two years, pointing out that in twenty years a member may have acquired other serious medical problems which would disqualify him from reinstatement. He based his decision on the fact that the only medical issue in the case was the plaintiff's back and "[n]othing in the summary judgment file . . . suggests that other medical or psychological problems are at issue here." The town urges that his ruling improperly shifts to the town the burden of identifying specific medical problems and bringing them to the attention of the medical panel in order to trigger the broad evaluation mandated by c. 306. It claims the town is not in a position to have independent knowledge of its retired employees' latent medical conditions. Since we base our decision on different grounds (an appellate court may affirm a judgment on grounds other than those relied on by the Superior Court judge), we need not comment on the town's claim.

[4]PERAC later — eleven months after it had submitted the certificate to the Brookline retirement board — and after the parties had filed their briefs and the judge had held a hearing on the cross motions for summary judgment, in a letter asked the Brookline police chief for additional information. This letter was not presented to the judge prior to his decision, nor included with the papers submitted with a motion filed on the date of his decision in which the defendant sought to file additional papers. Accordingly, we do not consider the letter.

medical panel were automatically to be reinstated, see *White* v. *Boston*, 428 Mass. 250, 254 (1998) — some of the changes, particularly the standards for medical examinations, required the issuance of regulations. PERAC, indeed, was specifically charged with issuing regulations concerning the standards for conducting medical examinations. See G. L. c. 32, § 6.[5] PERAC, in exercising that function, could reasonably have decided that regulations for such standards under the new statute could best be implemented by the development of guidelines for determining the essential duties of a position. See 840 Code Mass. Regs. § 10.20, which was issued on September 4, 1998 and which is entitled "Essential Duties."

Moreover, in the interim, the existing regulations (dated July 1, 1993) to a large extent furthered the purposes of c. 306 and were not in contravention thereof. The existing regulations required that the medical panel be provided with a description of "the member's principal duties and responsibilities" and "any particular physical or mental requirements prescribed for the position." See §§ 10.07(1)(a), 10.07(2)(b), 10.08, 10.16 of the 1993 regulations.

We also note that St. 1996, c. 306, which replaced the commissioner of public employee retirement with PERAC, specifically provided, among other things, in § 55,[6] that "all orders, rules, regulations . . . shall continue in effect as if established . . . by the public employee retirement administration commission unless or until amended, modified, suspended, or revoked."

In sum, PERAC's decision to rely on the existing standards for medical examinations "was a reasonable compliance with the statutory policy," at least during the period reasonably required for the issuance of new regulations. See *Brooks* v. *Architectural Barriers Bd.*, 14 Mass. App. Ct. 584, 588-590 (1982) (authority "to frame, amend, and deviate from regulations necessarily implies a range of authority for establishing priorities for enforcement of the general legislative policy").

2. The town has raised two other points. It claims that, because the plaintiff has not completed a training program under

---

[5]Although the statute requires PERAC to issue regulations for ordinary disability retirement, the statutory scheme implies that regulations are also required for accidental disability retirement and subsequent reinstatement. This interpretation is in accordance with PERAC's practice.

[6]The section was also amended by St. 1996, c. 427, in a manner not here relevant.

G. L. c. 31, § 39,[7] he is not entitled to immediate reinstatement. That statute was enacted prior to St. 1996, c. 306, which, as we have indicated, provides for automatic reinstatement of an employee after clearance by the medical panel. An interpretation which is harmonious with both statutes mandates reinstatement but permits the town on reinstatement to require the completion of a retraining program. See *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 259 (1998) (after reinstatement, appointing authority may forthwith institute discharge proceedings).

3. The town also claims that the motion judge erred in ruling that the town did not have an appeal under G. L. c. 32, § 16(4). The town had filed an appeal to the Contributory Retirement Appeal Board (CRAB) under G. L. c. 32, § 16(4), before the plaintiff commenced this action. The town claims the judge erred in not deferring to CRAB. The plaintiff contends that CRAB did not have authority to decide the appeal. We need not decide this issue, because here there is no dispute about the facts, and the issues before us involve merely questions of law. In such circumstances, even if CRAB had jurisdiction, exhaustion of administrative remedies would not be required. *Balcam* v. *Hingham*, 41 Mass. App. Ct. 260, 267 (1996), and cases cited.

Since the plaintiff has not filed a cross appeal, we do not deal with any of the issues concerning the date on which reinstatement should take effect. The plaintiff also cites no authority for the awarding of legal fees, and his request for such fees is denied.

*Judgment affirmed.*

---

[7]That statute, as appearing in St. 1987, c. 697, § 8, provides in relevant part: "If a permanent employee who has become separated from his position because of disability shall be subsequently capable of employment as determined pursuant to section eight of chapter thirty-two . . . such employee shall be placed in a position in the same or similar title in the department from which he was separated or any other department prior to the appointment from any civil service list; provided, however, that in the event that such placement of such employee occurs after a period of time greater than five years from the date of such separation . . . such placement right shall be subject to the completion by such employee of a retraining program established by the appointing authority, and approved by the personnel administrator."