John L. Sullivan *vs.* Town of Brookline.

Norfolk. September 6, 2001. - November 14, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Civil,* Summary judgment. *Public Employment,* Accidental disability retirement, Police, Reinstatement of personnel. *Public Employee Retirement Administration Commission. Statute,* Construction.

In addressing the merits of a formerly disabled public employee's complaint seeking a declaration that he was entitled to reinstatement to full employment pursuant to the provisions of G. L. c. 32, § 8 (2), a Superior Court judge was bound to review the requirements imposed by § 8 (2) on a regional medical panel and, on the employer town's appeal to this court from the grant of summary judgment for the employee, review of the judge's conclusions of law, including his interpretation of § 8 (2), was required. [356]

The Public Employee Retirement Administration Commission (PERAC), acting in 1997 on a formerly disabled employee's application for reinstatement under G. L. c. 32, § 8 (2), reasonably decided to continue to apply a medical panel evaluation standard in effect pending the issuance of new regulations by PERAC under amendments to § 8 (2), effected by St. 1996, c. 306, which set new standards and, where the preamendment standard substantially advanced the purposes of St. 1996, c. 306, and the regional medical panel appropriately applied it in evaluating the employee, the employee was entitled to reinstatement under the provisions of § 8 (2). [356-358]

Although G. L. c. 32, § 8 (2), compelled reinstatement of a formerly disabled public employee who had been medically certified as eligible, and a vacancy existed, G. L. c. 31, § 39, required that the employee, who had been away from the job for "a period of time greater than five years," complete a retraining program before being entitled to return to full employment. [359-363]

Civil action commenced in the Superior Court Department on January 2, 1998.

The case was heard by *Patrick F. Brady,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*George F. Driscoll, Jr.,* for the defendant.

*F. Robert Houlihan* for the plaintiff.

*Thomas F. Reilly*, Attorney General, *& Judith S. Yogman*, Assistant Attorney General, for Public Employee Retirement Administration Commission & another, amici curiae, submitted a brief.

IRELAND, J. The plaintiff, a twenty-year retiree of the Brookline police department (department), raises two issues through his petition for reinstatement: first, what standard should apply in evaluating a retiree's fitness to return to full employment; and second, whether a long-term retiree must complete retraining before becoming entitled to reinstatement. To answer these questions this court must interpret G. L. c. 32, § 8 (2), and G. L. c. 31, § 39. We conclude that G. L. c. 32, § 8 (2), compels reinstatement of retired employees once properly cleared by the retirement board, and a vacancy exists; however, G. L. c. 31, § 39, requires retirees who have been away from the job for "a period of time greater than five years" to complete a retraining program before they are entitled to return to full employment. Accordingly, we vacate the grant of summary judgment in the plaintiff's favor and remand the case to the Superior Court for entry of an order declaring the plaintiff is entitled to reinstatement to his former position or a similar position on his successful completion of a retraining program.

1. *Facts.* In August, 1977, the plaintiff, John L. Sullivan, retired from the department pursuant to G. L. c. 32, § 7, on a regional medical panel (medical panel) report diagnosing him with a disabling condition of the lower back. After nearly twenty years of disability retirement, the plaintiff requested reinstatement to his former position as a "Patrolman" with the department on June 25, 1997. On September 9, 1997, a medical panel, convened under the authority of the Public Employee Retirement Administration Commission (PERAC), examined the plaintiff and concluded that his "condition [had] changed so that [he was] able to return to the [same] position from which [he] retired." On November 18, 1997, the Brookline retirement board (board) recorded a vote acknowledging receipt of the medical panel's report. The board communicated the text of its vote and a copy of the medical panel certificate to the chief of police on November 26, 1997. Counsel for the plaintiff wrote to

the chief of police and to the chairman of the board of select-
men requesting immediate reinstatement. Town counsel
responded on December 22, 1997, stating the town had not
decided whether to reinstate the plaintiff.

The plaintiff then brought his verified complaint in the
Superior Court on January 2, 1998, seeking injunctive and
declaratory relief.[1] The plaintiff sought a preliminary injunction
to prevent the town from filling all vacant patrol officer posi-
tions, which was granted. The plaintiff then filed a motion for
summary judgment to which the town responded with a cross
motion for summary judgment. A Superior Court judge ordered
the town to reinstate the plaintiff to the position of police
patrolman. The town appealed and the Appeals Court affirmed
the judgment. *Sullivan* v. *Brookline*, 50 Mass. App. Ct. 16
(2000). We granted the town's application for further appellate
review.[2]

---

[1]The town argues that the plaintiff's complaint should be dismissed because
it appealed to the Contributory Retirement Appeal Board (CRAB) and the mo-
tion judge erred in failing to consider the adequacy of the administrative
remedy. This argument fails. Nowhere in the language of § 8 (2), does a right
of administrative appeal to challenge the decision of a regional medical panel
appear. See *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 260
(1998). Furthermore, G. L. c. 32, § 16 (4), does not provide a right to appeal
from a decision of a regional medical panel, a town, or a board of selectmen.
The cases the town cites in support of its assertions are of no avail because in
each case a party was seeking review of a decision of the retirement board
and not of the medical panel. See *Quincy Retirement Bd.* v. *Contributory
Retirement Appeal Bd.*, 340 Mass. 56, 59 (1959) (appeal to CRAB sought
from decision of retirement board); *Retirement Bd. of Revere* v. *Contributory
Retirement Appeal Bd.*, 36 Mass. App. Ct. 99, 101 (1994) (same). In the
instant case, neither the retirement board nor PERAC has taken any action
that is subject to review under G. L. c. 32, § 16; the retirement board's and
PERAC's functions merely have been to provide notice of the panel's deci-
sion to the employer.

Finally, exhaustion cannot be required where no administrative remedy
exists. See *O'Neill* v. *City Manager of Cambridge*, *supra* at 260; *Space Bldg.
Corp.* v. *Commissioner of Revenue*, 413 Mass. 445, 448 (1992). Neither G. L.
c. 32, § 8 (2), nor § 16, provides administrative appeal from a regional medi-
cal panel's decision. The plaintiff was, therefore, not subject to any exhaustion
requirement. Where no administrative remedy existed, the judge had no basis
on which to decline to consider the merits of the plaintiff's complaint.

[2]The plaintiff argues that the issue of the standard used by the regional
medical panel is not properly before the court because the town did not bring
it by an action in the nature of certiorari. We reject this argument. Even if an

2. *Standard of review.* Summary judgment will be upheld when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992), quoting *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). In addressing the merits of the plaintiff's complaint the motion judge was bound to review the requirements imposed by § 8 (2) on the regional medical panel. Additionally, the town's appeal from the grant of summary judgment for the plaintiff requires review of the judge's conclusions of law, including his interpretation of § 8 (2).

3. *Interpretation of G. L. c. 32, § 8 (2).* Prior to 1996, G. L. c. 32, § 8 (2), as amended through St. 1989, c. 341, § 12, read as follows:

> "If, as a result of the report of such regional medical panel, the board finds the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement, or in a similar employment in the same governmental unit."

Statute 1996, c. 306, § 16, rewrote the law to read:

> "If, within two years of the date that a member is retired under section 6 or 7, a regional medical panel determines that the retired member is able to perform the essential duties of the position from which he retired, if following the completion of a rehabilitation program required under subdivision (1), a regional medical panel so finds, the member shall be returned to such position and his disability retirement shall be revoked . . . ."

---

action in the nature of certiorari were required, a matter we need not decide, the plaintiff's request for a declaration that he is entitled to reinstatement forthwith according to the provisions of G. L. c. 32, § 8 (2), removes that barrier. The Superior Court judge was bound to review the action of the regional medical panel in determining the plaintiff's rights and an appeal from his grant of summary judgment required review of his conclusions of law.

"If, after two years of the date that a member is retired under section 6 or 7, the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant . . . ."

The revised standard requires the medical panel to determine whether a returning retiree is able to perform the essential duties of the position and not just whether the disabling condition has changed so that the retiree is physically able to return to the prior position. The amended standard also removed any administrative discretion in reinstating a former retiree to full duty. See *White* v. *Boston*, 428 Mass. 250, 253-254 (1998).

The Legislature approved St. 1996, c. 306, on August 9, 1996, and it became effective on November 7, 1996. *Id.* at 252. Chapter 306 also transferred all of the authority of the Public Employee Retirement Administration (PERA) to PERAC and continued all existing rules and regulations as if passed by PERAC. See St. 1996, c. 306, § 55. On December 17, 1996, the executive director of PERAC informed local retirement boards that medical panels would continue to employ the preamendment standards while PERAC developed guidelines for determining the essential duties of a position. PERAC amended its regulations to include the guidelines for determining the essential duties of a position on September 4, 1998. See 840 Code Mass. Regs. § 10.20 (1998).

The town contends that the medical panel applied the wrong standard in evaluating the plaintiff and, as a result, he was not entitled to reinstatement. It argues that continued application of the preamendment standard conflicts with the purposes of St. 1996, c. 306, and was not the intent of the Legislature. We decline to accept this view.

We agree substantially with the reasoning of the Appeals Court as to the appropriate application of G. L. c. 32, § 8 (2), and only briefly restate that reasoning here. See *Sullivan* v. *Brookline*, *supra*. For the purposes of our decision, it is sufficient to state that PERAC's determination to use the prior

standard in evaluating returning and formerly disabled retirees was reasonable in light of the need for regulations to implement the new standard and the reality of existing retiree petitions for reinstatement. PERAC's decision to implement the new standard through the development of regulations guiding the determination of the essential duties of a position was also reasonable. See 840 Code Mass. Regs. § 10.20. Further, PERAC had the power to promulgate regulations governing the standards for conducting medical evaluations. See G. L. c. 32, § 6 ("examination shall be conducted in accordance with . . . rules and regulations promulgated pursuant to this chapter"). See also St. 1996, c. 306, § 55 (vesting PERAC with "rule and regulation making authority" of PERA).

Moreover, even though the amended standard and the interim standard differed in some respects, PERAC's use of the interim standard substantially advanced the purposes of St. 1996, c. 306. See St. 1996, c. 306, § 55 ("all orders, rules, [and] regulations . . . shall continue in effect as if established . . . by [PERAC] unless or until amended, modified, suspended, or revoked"). This language facilitated the transfer of authority to PERAC from PERA, and its terms clearly indicate an intent to continue all existing regulations. Additionally, the then-existing regulations called for a description of "the member's princi[pal] duties and responsibilities" to be provided to the panel as well as "any particular physical or mental requirements prescribed for the position." 840 Code Mass. Regs. § 10.07 (1)(a), (2)(b) (1993). See *id.* at §§ 10.08, 10.16. A description of these requirements is different under the new regulations, but the provision of a description under the regulations existing at the time of the plaintiff's evaluation did not conflict with and substantially advanced the purposes of St. 1996, c. 306.

PERAC's decision to continue to apply the preamendment medical panel evaluation standard in the interim was reasonable in light of the need for regulations to implement the new standard created by St. 1996, c. 306. The interim standard substantially advanced the purp ses of St. 1996, c. 306, and the regional medical panel appropri ,ely applied it in evaluating the plaintiff. The plaintiff is enti 'd to reinstatement under the provisions of G. L. c. 32, § 8 (. .

4. *Interrelation of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39.* We held in *Milton* v. *Personnel Adm'r of the Dep't of Personnel Admin.*, 406 Mass. 818 (1990) (*Milton*), that G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, should be interpreted harmoniously and that they "combine to form a cohesive whole." *Id.* at 822.[3] We discussed the Legislature's attempt to strike a balance between the rights of retirees who are capable of returning to their old positions, and the protection of municipalities faced with rehiring employees who may not have worked for some years. *Id.* at 827. Despite the 1996 amendments, the interrelation of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, continues to balance the same considerations.

The 1996 amendments to G. L. c. 32, § 8 (2), did not affect the reinstatement provisions of G. L. c. 31, § 39. The Legislature enacted the retraining provision when it amended G. L. c. 32. See St. 1982, c. 630, § 3.[4] When it crafted the 1996 amendments, the Legislature was aware of the language of G. L. c. 31, § 39. See *Milton, supra* at 821-822 (discussing G. L. c. 32, § 8, and G. L. c. 31, § 39, together). See also *White* v. *Boston*, 428 Mass. 250, 253 (1998) (noting amendment "may be a reaction" to *Milton* holding). It is fair to assume that the Legislature would have altered the language of G. L. c. 31, § 39, if it had intended a different application when it amended G. L. c. 32, § 8 (2). Therefore, the Legislature's decision to preserve § 39 reflects a conscious choice to continue to apply its provisions to returning retirees even after the significant changes to the standard applied by the medical panel and the removal of department head discretion.

The pertinent language of G. L. c. 31, § 39, reads as follows:

> "If a permanent employee who has become separated from his position because of disability shall be subse-

---

[3]*Milton* v. *Personnel Adm'r of the Dep't of Personnel Admin.*, 406 Mass. 818 (1990), was decided before the 1996 revision of G. L. c. 32, § 8 (2). The *Milton* holding that department head approval is required before a retiree may be reinstated to his or her former position, *id.* at 825-826, has been rendered inapplicable by St. 1996, c. 306.

[4]The Legislature subsequently amended the retraining provisions, G. L. c. 31, § 39, in ways that are not relevant to our analysis here. See St. 1987, c. 697, § 8.

quently capable of employment as determined pursuant to section eight of chapter thirty-two by the retirement board, as defined in section one of chapter thirty-two, such employee shall be placed in a position in the same or similar title in the department from which he was separated or any other department prior to the appointment from any civil service list; provided, however, that in the event that such placement of such employee occurs after a period of time greater than five years from the date of such separation or results in such employee occupying a position in a different title from the title of the position from which he was separated, such placement right *shall be subject to the completion by such employee of a retraining program established by the appointing authority, and approved by the personnel administrator*" (emphasis added).

A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result. See *Cohen* v. *Commissioner of the Div. of Med. Assistance*, 423 Mass. 399, 409 (1996), cert. denied sub nom. *Kokoska* v. *Bullen*, 519 U.S. 1057 (1997); *O'Brien* v. *Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 443-444 (1989); *Commonwealth* v. *Vickey*, 381 Mass. 762, 767 (1980). It is clear that the Legislature intended for retirees returning to work after five or more years of retirement to complete retraining before any reinstatement right should inhere in them. The language of the statute states that the "placement right" of retirees returning after five or more years "*shall be subject to* the completion . . . of a retraining program*" (emphasis added). We must give effect to the Legislature's use of the words "subject to," which condition the placement right of a retiree on completion of retraining. Furthermore, the Legislature's use of the word "shall" in this context makes retraining mandatory. See *Commonwealth* v. *Cook*, 426 Mass. 174, 180-181 (1997), and cases cited (interpreting "shall" as mandatory, in accord with general rule of statutory interpretation). The language is not susceptible of a different reading.

Moreover, an interpretation of G. L. c. 31, § 39, and St. 1996, c. 306, that makes retraining a condition subsequent to

reinstatement does not further the purposes of St. 1996, c. 306, i.e., to return formerly disabled employees to work and to prevent "healthy" retirees from profiting at the expense of the taxpayers.[5] Nor does it further the purposes of G. L. c. 31, § 39, to "increase the efficiency and effectiveness of the administration of the contributory retirement laws of the commonwealth." See St. 1982, c. 630, preamble. The retraining requirement set forth in G. L. c. 31, § 39, recognizes that, after five or more years away from the job, the former employee will not be familiar with the procedures, policies, practices, or even equipment involved in performing the job, as many of those aspects of the work will have undoubtedly changed since the retiree last held the position.[6] Allowing retirees to return to the job prior to any retraining would return to the payroll of a police department, with full pay and benefits, officers who could not perform the complete range of duties. Meanwhile, the "vacancy" the reinstated officer purportedly fills, in effect, remains open during retraining and may have to be filled by another officer at an overtime rate until the reinstated officer's retraining is completed. Additionally, the reinstated officer is able to accumulate additional years in "service" equal to the period of time he was retired and adds to his average rate of pay for superannuation retirement purposes without making any additional contributions to the retirement system for the additional years in service accumulated on his return. See G. L. c. 32, § 8 (2) (*b*). "Reinstated" officers may also expose the municipality to liability to third parties if they remain untrained and, if reinjured while retraining, they will be able to receive new and pos-

---

[5]Although "[t]here is no legislative history for Chapter 306," there is some evidence that the legislative purpose was to prevent medical retirees from reaping the benefits of disability retirement while engaging in "private pursuits involv[ing] physical demands equal to, or greater than, those imposed on them while in their civil service positions." *White* v. *Boston*, 428 Mass. 250, 253 (1998).

[6]In the case of a police officer such as the plaintiff, who has not been active for some twenty years, such changes would be dramatic. An officer returning after such a long hiatus would, for example, be unfamiliar with much of the technology now used to perform police work (e.g., communications devices, computer systems, techniques for crime-scene processing), and would also be unaware of legal developments affecting an officer's work in areas such as search and seizure or interrogation.

sibly higher benefits under G. L. c. 41, § 111F, or G. L. c. 32, § 7. See generally *Milton, supra* at 826. The premature reinstatement of former retirees neither prevents abuse nor yields efficient administration of the retirement system.

A requirement of retraining prior to reinstatement to full duty is consistent with the language and the purposes of St. 1996, c. 306, and G. L. c. 31, § 39. Imposing retraining prior to reinstatement reduces the costs associated with rehiring former retirees and contributes to the efficiency of the retirement system. An officer eligible for reinstatement remains on his or her retirement income during retraining rather than prematurely resuming full pay and benefits, just as a formerly disabled officer remains on his or her retirement income until a vacancy exists. Additionally, if former retirees fail to complete retraining satisfactorily, they are simply not reinstated and the municipality does not have to navigate the civil service laws to dismiss them. Finally, required retraining ensures that former retirees are fully prepared to perform the duties imposed by their positions, reducing the risk of reinjury and liability to third parties.

The balance struck between conflicting interests of returning retirees and municipalities continues in the terms of G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, after the 1996 amendments. In some respects, the amendments adjusted the statutes' provisions to allow more consistent application. Prior to the amendments, the standard applied by the regional medical panel was the same for all returning retirees regardless of the length of time they were on disability retirement. See G. L. c. 32, § 8 (2), as appearing in St. 1982, c. 630, § 19.[7] The 1996 amendments changed the language not only to create new standards, but also to apply different standards to returning retirees based on the length of their retirement. The medical panel standard applied to retirees returning within two years of the date of their retirement requires the determination that "the retired member is *able to perform the essential duties of the position*" (emphasis added). St. 1996, c. 306, § 16. Whereas the standard applied to

---

[7] The standard applied in all cases was that "the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position." G. L. c. 32, § 8, as appearing in St. 1982, c. 630, § 19.

retirees returning after two years from the date of retirement requires the determination that "the retired member is *qualified for and able to perform the essential duties of the position*" (emphasis added). *Id.* The difference between these two standards may seem slight, but the additional words "qualified for" demonstrate an intent that there be a more stringent examination. Finally, G. L. c. 31, § 39, applies in the same way that it did before the 1996 amendments to require retirees returning after five or more years of disability retirement to complete a retraining program prior to reinstatement.

The 1996 amendments incorporate graduated medical review standards with the retraining provisions of G. L. c. 31, § 39, to balance the interests of returning retirees with the needs for municipalities to protect against the dangers of rehiring employees unfamiliar with the present-day practices involved in performing the duties of the job. The amendments appropriately emphasize the number of years a returning retiree has been separated from employment in applying progressively more stringent requirements before allowing reinstatement. The provisions of G. L. c. 31, § 39, form a constituent part of this scheme so that G. L. c. 32, § 8 (2), and G. L. c. 31, § 39, continue to "combine to form a cohesive whole." *Milton, supra* at 822.

5. *Conclusion.* The summary judgment is vacated and the case is remanded to the Superior Court for the entry of an order declaring that the plaintiff is to be reinstated to his former position subject to his successful completion of a retraining program.

*So ordered.*