Rufo, Robert C., J.
The defendant, Public Employee Retirement Administration Commission (“PERAC”) has moved for (1) injunctive relief enjoining the plaintiff, the Brockton Retirement Board (“the Board”), from further withholding, diverting and/or improperly crediting the retirement contributions of any public employee; and (2) an order, requiring the Board to properly credit all such contributions, together with all applicable interest, to the statutorily prescribed funds. For the following reasons, PERAC’s motion for injunctive relief is ALLOWED, in part, on a preliminary basis.

BACKGROUND

The dispute in the underlying case arose out of the Board’s refusal to recognize reemployed public employee, Michael L. Petrone (“Petrone”),[3] as an active “member in service” under G.L.c. 32, §8, a portion of the state retirement and pension statute, or to subsequently accept the regular deductions made from Petrone’s wages for contribution into the retirement and pension system. In 1994, Petrone was approved by both PERAC and the Board for disability retirement in accordance with G.L.c. 32, §7. Following his approval as a disability retiree, Petrone began receiving benefits on a monthly basis, which included both a pension benefit and an annuity based upon the value of his accumulated deductions. However, in August 2002, following a regional medical panel examination, as statutorily mandated by G.L.c. 32, §8, Petrone was found to be physically capable of resuming his former duties as a Brockton police officer and was subsequently certified by PERAC to return to his former position.
Sometime thereafter, the Board was notified by the City of Brockton Police Department that Petrone was in the process of completing a retraining program, as authorized by G.L.c. 31, §39, and upon completion of such training, Petrone would be enrolled as an active member of the City of Brockton Police Department. As such a member, the City would withhold certain funds from his pay for contribution into the Brockton Retirement System. However, on August 27, 2003, the Board voted to refuse to recognize Petrone as a member in service or to accept additional retirement contributions from Petrone or anyone on his behalf. The Board determined that because Petrone had accepted disability retirement benefits as a result of his work-related injuries, he was not entitled to be re-employed in his former position. The Board also made an independent and unilateral determination that Petrone was still disabled and not capable of performing all of the duties of a patrolman. These findings were memorialized in a letter dated September 3, 2003 and subsequently sent to Petrone via the Board’s private counsel.
Shortly after receiving the Board’s letter, Petrone forwarded the findings to Joseph Connarton (“Connarton”), Executive Director of PERAC. On September 25, 2003, Connarton again notified the Board that Petrone would soon be enrolled as an active member of the Brockton Police Department and that the Board should then return him to member in service status and subsequently accept certain funds deducted from his pay for transmittal to the Brockton Retirement Fund. On January 28, 2004, the Board, in response to Connarton’s letter, instituted this action, filing a complaint for declaratory judgment requesting that this Court:
1. Restrain PERAC from requiring that Petrone and Sweeting be reinstated to their prior positions;
2. Preliminarily enjoin PERAC from requiring the employer to reinstate Petrone and Sweeting;
3. Declare that G.L.c. 32, §8 is in conflict with G.L.c. 59, §20A, and is therefore unconstitutional;
4. Permanently enjoin PERAC from initiating prosecution or enforcing G.L.c. 32, §8 against the Board;
5. Grant any such further relief as it may deem just and proper.
On March 9, 2004, Connarton notified the Board that Petrone had successfully completed his retraining program and was restored to service. Connarton again informed the Board that it had a fiduciary duty to restore Petrone to member in service status and to subsequently accept deductions taken from his regular compensation. On January 3, 2005, the Board, through counsel, informed Connarton that it would continue to refuse to accept Petrone as an active member of the retirement system and would not accept any deductions made on his behalf.[4] On January 12, 2005, PERAC notified the Board’s counsel that the Board’s actions were unlawful and that it was referring the matter to the Attorney General’s office. On July 25, 2005, the Attorney General’s Office, on behalf of PERAC and in response to the underlying action, filed a motion with this Court for further relief pursuant to G.L.c. 231 A, §5, and for a permanent injunction in aid of further relief.

DISCUSSION

In determining whether to grant a preliminary injunction, this court considers the balancing test set forth in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). First, the court must evaluate, “the moving party’s claim of injury and its chance of success on the merits.” Id. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk of irreparable harm which granting the injunction *184 would create for the opposing party.” Id. “In the context preliminary injunction, the only rights which may irreparably lost are those not capable of vindication a final judgment, rendered either at law or in equity. at 617 n.11. Moreover, in appropriate cases, the court should also consider the risk of harm to the public interest. GTE Prods. Corp. v. Stewart, 414 Mass. 721, 723 (1993); Commonwealth v. Massachusetts, CRINC, 392 Mass 79, 89 (1984). Finally, apreliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Charles Wright & Arthur Miller, 11 Federal Practice & Procedure, §2948, at 129-30 (1995).
“In a suit such as this ‘[t]he standard of requiring a demonstration of immediate irreparable harm, employed in civil litigation as a condition precedent to the granting of injunctive relief, is not a prerequisite to the allowance of an injunction to the [movant] in this case. When the government acts to enforce a statute or make effective a declared policy of the Legislature, the standard of public interest and not the requirements of private litigation measure the propriety and need for injunctive relief.’ ” Commonwealth v. Massachusetts, CRINC., 392 Mass at 89, quoting United States v. D’Annolfo, 474 F.Sup. 220, 222 (D.Mass. 1979). Moreover, “the judge who decides whether an injunction should issue needs to consider specifically whether there is a likelihood of statutory violations and how such statutory violations affect the public interest.” Id., citing Hecht Co. v. Bowles, 321 U.S. 321, 330-31 (1944). Thus, if the Attorney General moves for a preliminary injunction, he is relieved from demonstrating irreparable harm relating to a defendant’s conduct which probably resulted in a violation of the general laws and adversely affects the public interest. Id. at 89-90.
In the instant case, there is a high probability that the Board violated several provisions of G.L.c. 32, §8. Section 8 is a specific provision of the state public employee retirement and pension statute (G.L.c. 32), which covers the procedures for reexamination of members retired for disability and the restoration of certain members to active service. Under G.L.c. 32, §8(1) (a), PERAC is required to continually evaluate and reexamine all members retired for disability. Section 8(l)(b) specifically provides that “(f]or the purpose of mental or physical examinations under this section, [PERAC] may appoint either a single physician or a three member regional panel to examine the retired member.” G.L.c. 32, §8(l)(b).
At issue in this case is whether G.L.c. 32, §8(2), as currently constituted, provides that a decision of a regional medical panel is of such a binding effect that it removes all discretion from local retirement boards on the issues of whether to re-employ and resume accepting contributory deductions from a member retired for disability. Prior to 1996, G.L.c. 32, §8 read as follows:
If, as a result of the report of such regional medical panel, the board finds the mental or physical condition of such retired member has so changed that he is physically able to return to the same or a similar position, the board may, with the approval of the head of any department in which a vacancy exists, order any such retired member to return and be restored to active service in the same employment in which such member was employed at the time of his retirement, or in a similar employment in the same governmental unit.
Thus, under the prior version of G.L.c. 32, §8, the board, in conjunction with the relevant department head, had discretion over the issue of whether to restore a retired member whom the regional medical panel determined fit to resume service. Statute 1996, c. 306, §16, however, rewrote the aforementioned language and now reads as follows:
If, within two years of the date that a member is retired under section 6 or 7, a regional medical panel determines that the retired member is able to perform the essential duties of the position from which he retired, if following the completion of a rehabilitation program required under subdivision (1), a regional medical panel so finds, the member shall be returned to such position and his disability retirement shall be revoked . . .
If, after two years of the date that a member is retired under section 6 or 7, the regional medical panel determines that the retired member is qualified for and able to perform the essential duties of the position from which he retired or a similar position within the same department, as determined by the personnel administrator, said member shall be returned to said position, provided the position is vacant. . .
G.L.c. 32, §8(2) (emphasis added).
Moreover, PERAC’s own regulations (840 CMR 10.13) also mirror the above case law and amended statutory language:
(a) If within two years of retirement a medical panel convened pursuant to G.L.c. 32, §8 unanimously finds that the member is able to perform the essential duties of the position from which he or she retired or so finds following completion of a rehabilitation program the member shall be returned to such position if it is vacant or a similar job within the same department for which he or she is qualified and his or her disability retirement shall be revoked.
(b) If after two years from the date of retirement a medical panel unanimously determines that the disability retiree is qualified for and able to perform the essential duties of the position from which he or she retired or a similar position within the same *185 department, as determined by the State Human Resources Division, the member shall be returned to said position, provided the position is vacant.
840 CMR. 10.13 (emphasis added).
The plain language of G.L.c. 32, §8(2)(a), as currently amended, and the corresponding regulations appear to mandate restoration of retirees by operation of law when a regional medical panel determines that the retiree is qualified and able to perform the essential duties of his or her former position. Neither the statutory nor regulatory language leave discretionary room for local retirement boards or PERAC to refute the findings of the medical panel. Indeed, the Supreme Judicial Court has repeatedly found that “(t]he revised standard requires the medical panel to determine whether a returning retiree is able to perform the essential duties of the position . . . [and that] [t]he amended standard also removed any administrative discretion in reinstating a former retiree to full duty.” Sullivan v. Town of Brookline, 435 Mass. 353, 357 (2001); see also White v. Boston, 428 Mass. 250, 253-54 (1998); O’Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998).
Nonetheless, the Board relies on G.L.c. 32, §91, Payment of Pensioners for Services, for support that they do have discretion in determining whether to restore members retired for disability. That section states in relevant part:
(a) No person while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town or district, shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district, except upon his return and restoration to active service as ordered by the appropriate retirement board after reexamination in case of retirement for disability.
G.L.c. 32, §91 (emphasis added). Although this provision does provide that restoration to active service is conditioned on an order by the appropriate retirement board, the actual reinstatement remains conditioned on reexamination. Under the current retirement system, the reexamination is still to be performed by the regional medical panel, not the local retirement board. See G.L.c. 32, §8(2); see also Sullivan, 435 Mass. at 354 (illustrating that the Board merely votes to acknowledge receipt of the medical panel’s report and then communicates the text of that vote and the medical panel report to the relevant department head). Thus, G.L.c. 32, §91 does not provide the Board with the power to reexamine or evaluate the retiree or discretion to refute a decision of the medical panel. The Board’s authority under this provision, is in actuality, ministerial in nature and remains wholly dependent on the determination of the medical panel.
Based on the foregoing, this Court finds that the Board’s refusal to recognize Petrone as an active and restored member more than “probably” resulted in a violation of G.L.c. 32, §8(2)(a). Moreover, the public has a legitimate and strong interest in enforcing a statutoiy mandate that requires re-employment of retirees collecting state funded benefits where a qualified medical panel determines that those persons are both physically and mentally eligible to perform their prior duties. Furthermore, given the fact that the statutoiy language of G.L.c. 32, §8(2)(a) is so clear and the fact that the Supreme Judicial Court has already interpreted that same language, this Court also finds that PERAC has a strong likelihood of prevailing on the merits of its case. Accordingly, this Court finds that it is appropriate to preliminarily enjoin the Board from rejecting restoration of Petrone as a public employee deemed fit to perform his duties by a regional medical panel constituted under G.L.c. 32, §8(l)(b).
With regard to the Board’s refusal to properly and unambiguously credit the retirement contributions of public employees to the statutorily prescribed funds, PERAC has again demonstrated that such conduct “probably” resulted in a violation of G.L.c. 32, §8(2)(b). Once a medical panel under G.L.c. 32, §8(2) determines that a retiree is fit to be re-employed, G.L.c. 32, §8(2) (b) mandates that the restored employee become a member in service and that certain deductions shall again be taken from that member. Section 8(2)(b) states in relevant part:
Upon return to work, he shall again become a member in service and regular deductions shall again be made from his regular compensation.
G.L.c. 32, §8(2)(b) (emphasis added).
PERAC’s regulations are likewise consistent with this statutoiy language:
(e) If any member is restored to active service, his or her retirement allowance shall cease and the individual shall again become a member in service and regular deductions shall again be taken from regular compensation.
840 CMR 10.13(2)(e) (emphasis added).
Based on the foregoing, this Court finds that the Board’s refusal to recognize Petrone as a member in service and its continued refusal to properly credit or for that matter unambiguously reflect his retirement contributions more than “probably” resulted in a violation of G.L.c. 32, §8(2)(b). Moreover, the public has a legitimate and strong interest in an accurate and unambiguous accounting of the state retirement fund and enforcement of a statutory mandate that requires retirement deductions actually be placed in the proper savings annuity fund. Furthermore, given the fact that the statutoiy language of G.L.c. 32, §8(2)(b) is so clear, this Court again finds that PERAC has a strong likelihood of prevailing on the merits of its case. Accordingly, this Court holds that it is appropriate to preliminarily enjoin the Board from rejecting restoration of Petrone as a member in service and from *186 withholding or improperly crediting his contributions. This Court orders the Board to properly credit and accurately reflect all of Petrone’s contributions, together with all applicable interest, to the statutorily prescribed funds.

ORDER

By way of preliminary injunction the plaintiffs, William G. Harris, William R. Farmer, William A. Gildea, William E. Parlow, and Aldo Petronio, are ENJOINED from withholding, diverting and/or improperly crediting the retirement contributions of Michael L. Petrone and are ORDERED to properly credit all such contributions of Michael L. Petrone, together with all applicable interest, to the statutorily prescribed funds.

 The full factual and procedural history for Daniel L. Sweeting was not provided nor necessary for the purposes of deciding this motion.

 At the hearing on this motion, Attorney Galvin, counsel for the Board, represented to this Court that the Board had in fact recognized Petrone as a member in service and that his deductions had been properly placed in the Brockton Retirement Fund. Attorney Galvin further represented that the Board has merely created a separate ledger for its own reference, showing each contribution made by Petrone.