## Mia Facella *vs.* City of Newton.

No. 06-P-1295.

Suffolk. March 21, 2007. - June 27, 2007.

Present: Kantrowitz, Trainor, & Grainger, JJ.

*Civil Service,* Reinstatement of personnel.

This court concluded that the defendant city's termination of the plaintiff's employment was not improper, despite the city's failure to comply with civil service rules and protections, where the plaintiff — a civil service disability retiree who had resumed some of her former duties, sought reinstatement after having been separated from her position for more than five years — had not successfully completed a statutorily required retraining program pursuant to G. L. c. 31, § 39. [462-464]

Civil action commenced in the Superior Court Department on April 1, 2005.

The case was heard by *Christopher J. Muse,* J., on a motion for judgment on the pleadings.

*Donnalyn B. Lynch Kahn,* Assistant City Solicitor, for the defendant.

*John P. Roache* for the plaintiff.

Kantrowitz, J. The specific question raised in this appeal is whether a civil service disability retiree, separated from her position for more than five years, may be reinstated to her previous position after resuming some of her former duties, but prior to completing a statutorily required retraining program pursuant to G. L. c. 31, § 39. We hold that such individuals may be temporarily conditionally reinstated, subject to the successful completion of a retraining program; if the program is not successfully completed, however, termination of employment is not improper and the municipality is not required "to navigate the civil service laws to dismiss [the employee]." *Sullivan* v. *Brookline,* 435 Mass. 353, 362 (2001).

*Background.* The Newton (city) police department employed the plaintiff, Mia Facella, as a police officer from March 21, 1975, to January 23, 1981. In 1981, she received an accidental disability pension for an injury sustained on the job. On October 19, 1998, Facella requested that the city retirement board convene a medical panel to review her application to return to active duty with the police department. On November 12, 1999, the Public Employee Retirement Administration Commission (PERAC) determined that Facella was able to perform the essential duties of the position from which she had retired. By letter to the city's chief of police, the personnel administrator of the human resources division of the Executive Office for Administration and Finance set forth the "acceptable" retraining program "for a disability retiree returning to the position of police officer." The letter provided, in pertinent part, that

"(3) All disability retirees statutorily subject to retraining shall be required to undergo the Human Resources Division's Physical Abilities Test.

"(4) All disability retirees statutorily subject to retraining shall be required to attend a basic police academy or the recently modified police academy promulgated by the Criminal Justice Training Council."

By letter to Facella dated November 18, 1999, the city police chief congratulated her on her "reinstatement" as a patrol officer and ordered her to report for duty on Monday, November 29, 1999, to the special services bureau. The letter also indicated that "[a]t [the time you report for duty] you will receive your work schedule and be assigned to an in house position until completion of a retraining program according to Massachusetts General Law, c. 31, § 39."

In reliance upon this letter, Facella resigned from her position as an investigator for the Boston Edison Company and reported as ordered. She was paid at the maximum rate for a patrol officer due to her prior years of service, and she contributed to the retirement system. She also wore a department-issued police uniform and badge, worked the same schedule as a patrol officer, and performed the same duties as other officers assigned

to the special services bureau. On weekends, Facella was assigned to the main desk at headquarters and performed the same duties as other officers assigned there.[1]

In February, 2000, Facella attended defibrillator training, receiving a stipend under the terms of the collective bargaining agreement between the police officers' union and the city, and she completed the physical ability test conducted by the State Human Resources Division. One month later, in March, 2000, she was assigned for retraining to the Norwood police academy, where she wore her department-issued uniform, as opposed to the garb worn by the new trainees. There, she was introduced to the academy staff and recruits as "Officer Facella."

Sadly, during her retraining, Facella began to experience severe headaches, culminating, on June 9, 2000, in her losing consciousness while sitting in a classroom. At that time, she had completed fourteen weeks of the twenty-two week program. Thereafter, she was diagnosed as having hypertension and migraine headaches, and as a result, she was unable to complete her retraining. On January 23, 2002, the city, after having waited eighteen months for her to recover, terminated her employment due to her inability to complete retraining.

Facella unsuccessfully sought relief before the Civil Service Commission (commission), which denied her claim, relying upon the Supreme Judicial Court's decision in *Sullivan* v. *Brookline*, 435 Mass. 353 (2001).[2] On Facella's complaint for judicial review under G. L. c. 30A, a Superior Court judge allowed her motion for judgment on the pleadings, stating, in pertinent part:

> "In its decision, the Commission mistakenly focused on Facella's entitlement to reinstatement rather than the power

---

[1] Conversely, as the civil service commission also found, Facella did not work on the street as a police officer; drive a police cruiser on patrol; carry a firearm; respond to radio or other calls; or take the oath of office.

[2] "[General Laws] c. 32, § 8(2), compels reinstatement of retired employees once properly cleared by the retirement board, and a vacancy exists; however, G. L. c. 31, § 39, requires retirees who have been away from the job for 'a period of time greater than five years' to complete a retraining program before they are entitled to return to full employment." *Sullivan* v. *Brookline*, 435 Mass. at 354.

of the Appointing Authority to reinstate Facella. Although Facella's 'placement right' had not yet accrued prior to the completion of retraining, the Appointing Authority did not lack the power to reinstate Facella after the PERAC cleared her for employment."

The city appealed. We reverse.

*Discussion.* At the time the city reinstated Facella, the law was in a state of flux concerning the procedure for reinstating formerly disabled civil service employees. In 1996, G. L. c. 32, § 8(2), was amended. St. 1996, c. 206, § 16. "The Legislature removed the language that gave the department head discretion to approve or to reject the reinstatement of a formerly disabled employee and replaced it with the directive that a formerly disabled, but now capable, employee 'shall' be returned to the employee's previous position or one similar to it if a vacancy exists." *White* v. *Boston*, 428 Mass. 250, 252 (1998). See *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 258-259 (1998) ("[General Laws] c. 32, § 8, mandates reinstatement of formerly disabled employees once a medical panel determines they are fit to return to their former positions and a vacancy exists").

While G. L. c. 32, § 8, requires reinstatement, G. L. c. 31, § 39, conditions reinstatement, for those employees returning after five or more years, on the successful completion of a retraining program.[3]

The city was thus acting under these guidelines when it "reinstated" Facella. Undecided at the time was the obvious —

---

[3]"If a permanent employee who has become separated from his position because of disability shall be subsequently capable of employment as determined pursuant to section eight of chapter thirty-two by the retirement board, as defined in section one of chapter thirty-two, such employee shall be placed in a position in the same or similar title in the department from which he was separated or any other department prior to the appointment from any civil service list; *provided, however, that in the event that such placement of such employee occurs after a period of time greater than five years from the date of such separation or results in such employee occupying a position in a different title from the title of the position from which he was separated, such placement right shall be subject to the completion by such employee of a retraining program established by the appointing authority, and approved by the personnel administrator*" (emphasis added). G. L. c. 31, § 39, as inserted by St. 1987, c. 697, § 8.

what was the status of an individual who did not successfully complete retraining? That issue was resolved by the Supreme Judicial Court in *Sullivan* v. *Brookline, supra,* in which the court held that G. L. c. 32, § 8(2), and G. L. c. 31, § 39, when read together, clearly demonstrated that the "Legislature intended for retirees returning to work after five or more years of retirement to complete retraining before any reinstatement right should inhere in them," *id.* at 360, and that "if former retirees fail to complete retraining satisfactorily, they are simply not reinstated and the municipality does not have to navigate the civil service laws to dismiss them." *Id.* at 362.

When Facella's case reached the commission, the decision in *Sullivan* had been released, and the commission based its decision upon it. The motion judge, in ruling against the commission, reasoned that "the Appointing Authority did not lack the power to reinstate Facella after the PERAC cleared her for employment." Simply put, the judge found that since the city had the power to reinstate Facella, and represented to Facella that it had, then she actually had been reinstated, subject to civil service rules and protections.[4] *Sullivan* counsels otherwise.

As applied to the present situation, *Sullivan* compels the conclusion that Facella's right to reinstatement and full employment could not attach unless and until she completed her retraining program. Since she never completed it, she never fulfilled

---

[4]In support of his decision, the motion judge placed much emphasis on the facial aspects of Facella's interim in-house position: she was paid at the maximum rate for a patrol officer; wore a blue police uniform (as opposed a recruit's khaki-colored uniform); worked the same schedule as other officers; and was addressed as "Officer Facella." The judge also stressed that the appointing authority had never explicitly informed Facella that her reinstatement was conditioned upon completion of the retraining program. In contrast, the commission found that these accommodations were merely "matters of courtesy" meant to allow Facella "to feel comfortable," and that both "parties were aware of [the retraining] prerequisite to restoration or reinstatement."

A court reviewing an administrative decision is required to be "highly deferential to the agency on questions of fact and reasonable inferences drawn therefrom." *Flint* v. *Commissioner of Pub. Welfare,* 412 Mass. 416, 420 (1992). See *McIsaac* v. *Civil Serv. Commn.,* 38 Mass. App. Ct. 473, 476 (1995) (In reviewing an action of the commission, "[t]he judge had the limited task of examining whether there was substantial evidence in support of the Commission's decision. It was not for the court to substitute its judgment on questions of fact or exercise of discretion").

the condition precedent to be legally reinstated, and therefore was never subject to the protections typically afforded to a tenured civil service employee. To hold otherwise would be to condone the "return to the payroll of a police department, with full pay and benefits, officers who could not perform the complete range of duties." *Sullivan* v. *Brookline*, 435 Mass. at 361. The fact that Facella has been separated from her position as a police officer for nearly two decades only increases the likelihood that she would not be able to "perform the complete range of duties."[5] *Ibid.*

*Conclusion.* Municipalities are statutorily precluded from reinstating to full employment formerly disabled but now medically cleared retirees, separated from their position for more than five years, prior to the successful completion of retraining. In the case at bar, at best, Facella was conditionally reinstated by the city, subject to her completing a retraining program. That she did not do so is fatal to her claim. As such, the judgment of the Superior Court is reversed, and a new judgment shall enter affirming the decision of the Civil Service Commission.

*So ordered.*

---

[5]"The retraining requirement set forth in G. L. c. 31, § 39, recognizes that, after five or more years away from the job, the former employee will not be familiar with the procedures, policies, practices, or even equipment involved in performing the job, as many of those aspects of the work will have undoubtedly changed since the retiree last held the position." *Sullivan* v. *Brookline*, 435 Mass. at 361.